**This version includes the errata issued 26Dec02-e**
## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 98-572

ROGER V. MANNING, APPELLANT,

V.

ANTHONY J. PRINCIPI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE

On Appeal from the Board of Veterans' Appeals

(Decided   December 19, 2002   )

*Michael P. Horan*, of Washington, D.C., was on the brief for the appellant.

*Tim S. McClain*, General Counsel; *R. Randall Campbell*, Acting Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Lydia L. Keyser*, all of Washington, D.C., were on the brief for the appellee.

Before KRAMER, *Chief Judge*, and FARLEY and HOLDAWAY[*], *Judges*.

FARLEY, *Judge*, filed the opinion of the Court.  KRAMER, *Chief Judge*, filed an opinion concurring part and dissenting in part.

FARLEY, *Judge*:  Before the Court is the March 13, 1997, decision of the Board of Veterans' Appeals (BVA or Board) that found that no clear and unmistakable error (CUE) claim under 38 C.F.R. § 3.105(a) existed as a matter law with respect to January 1981, September 1982, and February 1984, rating decisions of the regional office (RO) because those decisions were subsumed by a BVA decision dated in July 1990.  This Court had dismissed this appeal in May 1998 for lack of jurisdiction for failure to file a timely Notice of Appeal.  The appeal was reinstated, however, in April 1999, after the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) reversed our decision based upon *Linville v. West*, 165 F.3d 1382 (Fed. Cir. 1999).  *Manning v. West*, No. 99-

---

[*] Judge Holdaway participated in the decision on the merits of this case, but retired before the decision could be published.

7010, 1999 WL 106192 (Fed. Cir. Feb. 5, 1999). For the reasons that follow, the Court will affirm the decision of the Board.

## I. BACKGROUND

The appellant served on active duty from January 1963 to January 1970, including a tour of duty in Vietnam as a light weapons infantryman. Record (R.) at 145, 223. He received an honorable discharge and was awarded the Purple Heart medal with oak leaf cluster. *Id*. In December 1980, the appellant filed an original claim for service connection for a psychiatric disorder, which he alleged was caused by his experiences in Vietnam. R. at 147. He stated further that the New York City Police Department (NYPD) had rejected his application for employment as a police officer on psychiatric grounds and that he had asked the NYPD to send VA a copy of its findings. *Id*. A VA psychiatric examination report dated January 6, 1981, recited the history the appellant provided of having been rejected by the NYPD on the basis of a severe psychiatric disorder. R. at 150-51. The examination revealed that he was alert, clear and oriented, and his speech was relevant and coherent. *Id*. The appellant denied having recurrent war dreams, startle reflexes, or temper problems; he described himself as sociable and stated that he "gets along well with people." *Id*. He denied delusions, hallucinations, or suicidal ideation. *Id.* His memory, judgment, and insight were not impaired. The examiner diagnosed "[n]o psychiatric disorder." *Id.* The RO issued a rating decision denying the appellant's claim in January 1981. R. at 154. In that decision, the RO identified the January 6, 1981, VA examination as the "last examination" of the appellant. *Id*.

The appellant sought to reopen his claim in March 1981 and sent VA an authorization for the release of the report of his 1979 through 1980 psychiatric interviews with the New York City Department of Personnel. R. at 156. In April 1981, the RO requested the appellant's medical records from the New York City Department of Personnel. R. at 159. A May 1981 letter indicated that the appellant had been found medically qualified and that the Department of Personnel did not have any records pertaining to the appellant. R. at 162. The letter stated, however, that the NYPD did have records pertaining to the appellant. R. at 162. On May 18, 1981, the RO requested a copy of the medical records pertaining to the appellant from NYPD Psychological Services. R. at 165. A June 2, 1981, letter from NYPD Psychological Services stated that it was not its policy to release records

without the permission of its legal department, in addition to a written release from the person whose records are requested. R. at 167. The letter further indicated that a copy of the RO's request was being forwarded to the legal division. R. at 167. On August 28, 1981, the RO advised the appellant by letter that it had not received a reply to its request for his medical records and that it would be necessary for him to obtain them. R. at 170. The letter requested that he reply within 30 days and stated further that VA must receive the evidence within one year from the date of the letter or benefits would not be payable on his claim. *Id.* On the same date, the RO sent a second request for the appellant's records to NYPD Psychological Services. R. at 172.

In August 1982, the appellant submitted a statement disagreeing with the August 28, 1981, "denial" of his claim and requesting a hearing on the matter. R. at 174. The following month, the RO informed the appellant by letter that new and material evidence was required to reopen his claim that was denied by the RO on February 24, 1981. R. at 176. In January 1983, the appellant testified at a personal hearing before the RO, during which he stated that the NYPD had rejected him for employment because of a significant psychiatric disorder thought to be associated with his experiences in Vietnam. R. at 182. In February 1984, the RO denied the appellant's claim. Supplemental (Supp.) R. at 1, 4.

The appellant filed a Notice of Disagreement (NOD) with that RO decision in December 1984. R. at 190-91. In March 1986, the Board remanded the claim to the RO for additional development, including the procurement of the appellant's military personnel records and the provision of a VA psychiatric examination. R. at 222-24. An April 1986 memorandum signed by VA physician Dr. Walter Abells reflected that the appellant's psychiatric examination that had been scheduled for that day was canceled because no psychiatric report had been received from the NYPD. R. at 226. A January 1987 Report of a VA field examination reflected that the examiner had gone to the NYPD to obtain a copy of the appellant's psychiatric records but that his request was denied. R. at 254. The examiner recommended that the VA District Counsel issue a subpoena to the NYPD to obtain the records. *Id.* The district counsel, however, informed the RO that it had no authority to issue subpoenas. He suggested that the director of the RO had such authority and should be contacted. R. at 257. The appellant testified at personal hearings before the RO in October 1988 and in February 1989. R. at 264-314, 325-53. In July 1990, the Board reviewed the appellant's claim

for service connection for a psychiatric disorder, including post-traumatic stress disorder (PTSD) de novo, and issued a decision denying the claim. R. at 366-68. The Board found that the evidence did not demonstrate that the appellant suffered from a psychiatric disorder, i.e., the record did not contain a diagnosis of an acquired psychiatric disorder, and that no such disorder was incurred in or aggravated by his military service. R. at 367-68. In this regard, the Board specifically noted that the January 1981 VA examination, upon which the RO had relied for its denial that same month of the appellant's claim, had not found any psychiatric disorder. R. at 367.

The appellant submitted a letter to the RO in April 1992 inquiring about the denial of his claim. R. at 370-79. The RO replied by letter informing the appellant that the Board's July 1990 denial of his claim had become final and that he would need to submit new and material evidence to reopen his claim. R. at 381. In November 1992, the appellant testified at another personal hearing before the RO. R. at 393-409. He stated that he did not want to give his consent for the NYPD to release a copy of its psychiatric report to VA until VA proved it had accurately analyzed the evidence already of record. R. at 398. The appellant also stated that he was not willing to submit to another VA psychiatric examination. R. at 401. The appellant had indicated in a July 1992 letter to the RO that he wanted his claim to be reviewed on the evidence already of record so that his effective date would be the date of his original claim. *See* R. at 388-89. He also has expressed a concern that the RO's attempts at obtaining his NYPD psychiatric record at that point were an attempt to cause him to "forfeit" his entitlement to an award of retroactive benefits. *Id*. At a personal hearing before the RO in February 1993, the appellant stated that he was seeking a revision of the decision based upon CUE, but he was unclear as to whether he wanted to assert CUE in an RO decision or a BVA decision. R. at 444-45. He demanded to know why VA had not subpoenaed his records from the NYPD but added that he did not want VA to do so at the current time, and, in fact threatened that if VA did so, he would sue VA. R. at 459-61.

In June 1993, the RO determined that new and material evidence had not been presented to reopen the appellant's claim. R. at 468. The RO also determined that it lacked jurisdiction over his allegations of CUE in prior RO decisions because the BVA decision of July 12, 1990, found that an acquired psychiatric disability was not incurred or aggravated in service, thereby subsuming the RO decisions. R. at 469. The RO noted that any CUE claim, therefore, must be directed to the Board.

4

*Id*. The appellant submitted an NOD in September 1993. R. at 473-77. In a subsequent communication he identified as a demand for a Statement of the Case (SOC), the appellant indicated that he was alleging that VA's failure to secure the NYPD report constituted CUE and that he would not provide or authorize the release of that report to VA. R. at 485-89. An SOC was issued in March 1994. R. at 492-99. The appellant filed a VA Form 1-9 that same month. R. at 501-11. Therein, among other things, he argued that the Board lacked jurisdiction over his claim when it issued its 1990 decision and that, therefore, the RO erred in refusing to adjudicate his CUE claims. R. at 502, 510-11.

The appellant testified at hearings before the RO in November 1994 (R. at 521-59) and in June 1995 (R. at 597-675). At the June 1995 hearing, the appellant repeatedly stated that the new and material evidence issue was not on appeal and indicated that he was only appealing the CUE issue. R. at 599-600, 608. He complained about VA's failure to get the NYPD report but told the hearing officer that he did not want VA to communicate with the NYPD at that time because it was much too late. R. at 605. He also commented that he had refused to submit to a psychiatric examination after the 1986 BVA remand. R. at 611. In a subsequent written statement, the appellant alleged that the RO committed CUE in March 1981 by advising him to file a reopened claim rather than an NOD and that the BVA committed CUE in taking jurisdiction over the appeal (in 1986 and 1990) without a valid NOD. R. at 695-99. He also alleged that it was CUE for the RO to fail to get the NYPD report. R. at 700-03.

In its March 13, 1997, decision on appeal, the Board noted that the appellant had withdrawn the new-and-material-evidence issue from appellate consideration in his 1995 hearing. R. at 2. The Board found that the 1981, 1982, and 1984 RO decisions were subsumed by the 1990 BVA decision, and, therefore, were not subject to revision on the basis of CUE as a matter of law. R. at 1-5.

The appellant filed a motion for reconsideration of the March 1997 BVA decision with the Chairman of the BVA in July 1997. Supp. R. at 6-17. He specifically stated that he was not seeking reconsideration of the Board's July 1990 decision. Supp. R. at 6. The Chairman of the BVA denied the appellant's motion on December 16, 1997, finding that his motion did not demonstrate that the BVA decision contained "obvious error." R. at 19-20. This appeal followed.

5

In his initial brief, the appellant argues that the Chairman exceeded his authority in denying the appellant's motion for reconsideration by relying upon the "obvious error" standard. The appellant also contends that his claim must be remanded because the Board failed to address his allegation that the RO committed CUE by giving him improper advice to reopen his claim, rather than file an NOD, after the January 1981 denial of his claim, and because the RO's misleading advice amounted to a due process violation that rendered the RO's decisions nonfinal pursuant to *Hayre v. West*, 188 F.3d 1327 (Fed. Cir. 1999) (*Hayre I*). The appellant also contends that the RO's alleged breach of its duty to assist also rendered the RO decisions nonfinal pursuant to *Hayre I*. Finally, the appellant contends that the enactment of 38 U.S.C. § 7111, permitting challenges to BVA decisions on the basis of CUE, requires a remand because the Board found, in its March 1997 decision, that *Smith v. Brown*, 35 F.3d 1516 (Fed. Cir. 1994), precluded review of the 1990 BVA decision on the basis of CUE.

The Secretary filed a brief on October 12, 2000, in which he argues that the Board's decision should be affirmed because the Board properly found that the RO decisions could not be collaterally attacked because they had been subsumed by the Board's 1990 decision. With respect to the appellant's argument that the Chairman unlawfully denied his motion for reconsideration, the Secretary argues that the Court should decline to exercise jurisdiction over the BVA Chairman's denial of reconsideration because the reconsideration motion failed to allege changed circumstances or new evidence (*see* Supp. R. at 6-16) as required by *Engelke v. Gober*, 10 Vet.App. 396 (1997). The Secretary also contends that because the January 1981 RO determination had been subsumed, the Court lacks jurisdiction to consider the appellant's argument that a remand is required for the Board to address his contention that the RO's provision of misleading advice constituted CUE. Finally, the Secretary argues that in the absence of a pending claim of CUE in the 1990 BVA decision, there is no basis for remand under § 7111. The appellant filed a reply brief in October 2000.

In December 2000, the Court ordered supplemental briefing by the parties on the effect of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000). In February 2001, the appellant filed a supplemental brief in which he argues that a remand is required pursuant to the VCAA, but that the Court should also address his additional allegations

of error. The Secretary filed a supplemental brief on October 9, 2001, arguing that pursuant to *Smith v. Gober*, 14 Vet.App. 227 (2000), the VCAA is not applicable to the matters on appeal because the law and not the facts is dispositive.

## II. ANALYSIS

### A. The Appellant's Motion for Reconsideration

The appellant urges this Court to vacate the BVA Chairman's December 16, 1997, decision to deny his motion for reconsideration of the BVA decision on appeal because, the appellant argues, the Chairman improperly applied the "obvious error" standard in denying his motion. The Secretary argues that pursuant to *Engelke, supra*, the Court lacks jurisdiction to entertain this argument. In *Engelke*, the Court stated that although the Court has jurisdiction to review denials of reconsideration if the Court has jurisdiction over the underlying BVA decision (*Mayer v. Brown*, 37 F.3d 618 (Fed. Cir. 1994)), "the Court's willingness to review these denials has been limited to cases in which the movant alleges either new evidence or changed circumstances." *Engelke*, 10 Vet.App. at 399. "Where a claimant alleges only 'material error' or attempts to place before the Court an argument that is best reserved for a direct appeal from the underlying BVA decision, the Court will not review the denial of the motion to reconsider." *Id*. Although the Secretary is correct that the appellant's motion for reconsideration was not based upon new evidence or changed circumstances, the arguments presented here on appeal are not "best reserved for a direct appeal from the underlying BVA decision." *Id*. In fact, the appellant's challenge to the standard of the BVA Chairman's review of a motion for reconsideration would completely escape review if we were to decline to exercise our jurisdiction. Accordingly, the Court holds that we have jurisdiction to consider the appellant's challenge to the denial of his motion for reconsideration pursuant to *Mayer, supra*, and that the exercise of that jurisdiction is appropriate in this matter.

As to the substance of the appellant's argument, however, we find no merit. This Court has considered and rejected the same argument, made by the same counsel, in *Timberlake v. Gober*, 14 Vet.App. 122, 132-33 (2000). As in *Timberlake*, the appellant argues here that, pursuant to VA Gen. Coun. Prec. 89-90 (Aug. 27, 1990) [hereinafter G.C. Prec. 89-90], "BVA reconsideration . . . is no longer tied to the 'obvious error' standard found in what is now 38 U.S.C. § 7103(c)."

Appellant's Brief (Br.) at 8-9. As was also the case in *Timberlake* "[t]he appellant's challenge is premised upon [his] mistaken interpretation of [G.C. Prec. 89-90]." 14 Vet.App. at 133. The appellant argues that, pursuant to G.C. Prec. 89-90, the Secretary may not utilize the "obvious error" standard in determining whether or not to grant reconsideration of a BVA decision, and thus that the BVA Chairman erred in this case by applying such a standard. In *Timberlake*, the Court explained:

> The VA General Counsel's opinion framed the "*QUESTION PRESENTED*" therein as follows: "When . . . the Chairman of the Board . . . ***orders reconsideration*** . . . , what type of review is to be conducted by the reconsideration section[?]" The opinion also "HELD" that, after reconsideration has been granted, "[t]he reconsideration section then sits in the same position as would the Board panel initially deciding the appeal, i.e., it should employ the same standard of review". Thus, by its own terms, G.C. Prec. 89-90 applies only after reconsideration has been granted and does not forbid the BVA Chairman from applying the "obvious error" standard as to whether to grant a motion for reconsideration. The fact that the Secretary has retained the concept of "obvious error" in his regulation regarding when "[r]econsideration of an appellate decision may be accorded" is a further indication that G.C. Prec. 89-90 did not intend the result urged by the appellant in this case. 38 C.F.R. § 20.1000(a) (1999) (stating that reconsideration of BVA decision is to be accorded, inter alia, "[u]pon allegation of obvious error of fact or law"). The Court expresses no opinion as to the validity of G.C. Prec. 89-90, which is not challenged by the appellant in this case.

*Timberlake*, 14 Vet.App. at 133. Although the appellant is correct in his assertion here that the Court's discussion of G.C. Pre. 89-90 was not essential to its holding in *Timberlake*, we find the reasoning set forth in that case persuasive and hold today that G.C. Prec. 89-90 "applies only after reconsideration has been granted and does not forbid the BVA Chairman from applying the 'obvious error' standard as to whether to grant a motion for reconsideration." *See id.*

B. Appellant's Allegations of CUE in the 1981, 1982, and 1984 RO Decisions

With respect to the appellant's allegations of CUE in the 1981, 1982, and 1984 RO decisions, the Federal Circuit's holdings in *Smith, supra*; *Donovan v. West*, 158 F.3d 1377 (Fed. Cir. 1998); and *Dittrich v. West*, 163 F.3d 1349 (Fed. Cir. 1998), are controlling. In *Smith*, the Federal Circuit made clear that, under the law as it existed at the time of that decision, BVA decisions were not subject to revision on the basis of CUE. Moreover, in *Duran v. Brown*, this Court held that after *Smith*, "where an [agency of original jurisdiction (AOJ)] decision was appealed to and affirmed by

8

the Board and thus subsumed by the Board's decision, no claim of '[CUE]' under 38 C.F.R. § 3.105(a) exists as a matter of law with respect to that AOJ decision." 7 Vet.App. 216, 224 (1994).

> In *Donovan v. West*, *supra*, the Federal Circuit considered a situation in which a final, unappealed rating decision was reopened and adjudicated on the merits by the BVA. The court held that an unappealed 1947 RO decision, subsequently reviewed de novo on the merits by the BVA in 1988, was subsumed by that BVA decision and, thus, not subject to a claim of CUE as a matter of law. *Id.* at 1381-82, *aff'g Donovan v. Gober*, 10 Vet.App. 404, 408-09 (1997). Similarly, in *Dittrich v. West, supra*, the Federal Circuit affirmed the BVA's dismissal where a 1969 BVA decision reopened and fully readjudicated the same claim that was the subject of a 1960 rating decision. *See id*. at 1353.

*Morris v. West*, 13 Vet.App. 94, 96 (1999), *aff'd sub nom. Morris v. Principi*, 239 F.3d 1292 (Fed. Cir. 2001). In *Brown v. West*, 203 F.3d 1378 (Fed. Cir. 2000) the Federal Circuit clarified that a later BVA decision's delayed subsuming of an RO decision occurs only where the Board decided the same issue that the RO decided and where the RO decision and BVA review were based on the same factual basis. *Brown*, 203 F.3d at 1381-82. The requirement that the Board base its decision on the same factual basis, however, requires that the evidence of record at the time of the prior final RO decision be considered by the Board. *See Donovan* and *Dittrich*, both *supra; see also Morris*, 13 Vet.App. at 94.

In the instant case, the Board's 1990 decision decided de novo the same issue that had been decided by the RO in January 1981, i.e., entitlement to service connection for an acquired psychiatric disorder. Further, the BVA essentially found that, in light of the January 1981 VA examination report, the record before the RO in 1981 did not reflect the finding of any psychiatric disorder, thus in essence determining that, in 1981, the appellant could not have prevailed on his service-connection claim. The RO decisions of 1982 and 1984 confirmed the prior denials of the appellant's claim based upon the same evidentiary record. Further, those RO decisions were appealed to and affirmed by the BVA in its July 1990 decision. The 1990 BVA decision reviewed the same issue before the RO in 1981, 1982, and 1984, de novo on the same evidentiary record. Accordingly, the RO's 1981, 1982, and 1984, decisions were subsumed by the Board's 1990 decision. *See Donovan* (delayed subsuming)*, Dittrich* (same), and *Duran* (direct subsuming), all *supra*. The introduction of the 1969 psychiatric consultation (*see* R. at 230) into the record in June 1986 did not alter the evidentiary record in a meaningful way so as to affect subsuming. The Board, therefore,

9

properly concluded as a matter of law that the RO decisions of 1981, 1982, and 1984 were subsumed by the 1990 BVA decision and not subject to revision on the basis of CUE.

Although the appellant is correct that more recent legislation allows a claim of CUE in BVA decisions (38 U.S.C. § 7111), the only issues before the Board in the March 1997 decision here on appeal were the appellant's claims of CUE in the 1981, 1982, and 1984 RO decisions. The appellant did not raise any allegations of CUE in the 1990 BVA decision. Because allegations of CUE must be specifically raised to the Board, this Court has no authority to remand the matter for consideration of the new statute. *See Russell v. Principi*, 3 Vet.App. 310, 319-20 (1992) (en banc).

### C. Appellant's Allegations of Misleading Advice and *Hayre*

The appellant argues that the Court should remand this matter because, he contends, the Board failed to address his contention that the RO committed CUE in giving him misleading information when he was advised to submit new and material evidence to reopen his claim, rather than advising him to file an NOD. Appellant's Br. at 15-16. The BVA decision here on appeal, the only matter over which this Court has jurisdiction, found that the RO decisions the appellant challenges as the product of CUE are not subject to revision on the basis of CUE as a matter of law. We have affirmed that decision. Because the Board did not, indeed it could not, reach the merits of the appellant's CUE allegations, the Board did not err in not addressing the specific bases of the appellant's CUE allegations.

The appellant also argues that the allegedly misleading advice given to him by the RO, or the RO's failure to give him proper advice, vitiated the finality of the RO decisions. Appellant's Br. at 17-20 (citing *Hayre I*). The appellant asks this Court to remand his claim for the Board to determine, in the first instance, whether his due process rights were violated, thereby vitiating the finality of the RO's decisions. The appellant also argues that this matter should be remanded for the Board to consider whether his allegations that the RO breached its duty to assist could operate to vitiate the finality of the RO's decisions pursuant to *Hayre I, supra*. Although the appellant did raise arguments regarding the duty to assist and misleading advice to the Board, that these alleged errors somehow rendered the RO's decisions nonfinal is a matter raised for the first time here on appeal. There is no BVA decision on the issue of finality for this Court to review, nor has the appellant submitted any NOD which, "'in [any] way, explicitly or implicitly, purported to challenge the 'issue of finality' of

10

the [1981, 1982, and 1984] adjudication[s].'" *Baldwin v. Principi*, 15 Vet.App. 302, 303 (2001) (per curiam order) (quoting *Hayre v. Principi*, 15 Vet.App. 48, 52 (2001) [hereinafter*Hayre II*]). Accordingly, as in *Baldwin* and *Hayre II*, the Court has no choice but to dismiss the appellant's challenges to the finality of the RO's 1981, 1982, and 1984 decisions on the basis of *Hayre I, supra*, for lack of jurisdiction. *Baldwin*, 15 Vet.App. at 303.

### D. 38 U.S.C. § 7111

At the time the Board issued its decision in this matter, BVA decisions were not subject to revision on the basis of CUE. *See Smith, supra.* The Board correctly noted this in its March 13, 1997, decision. R. at 4. However, subsequent to that 1990 BVA decision, Congress enacted a law making BVA decisions subject to review on the basis of CUE. 38 U.S.C. § 7111. The appellant argues, therefore, that the Court should remand his claim for the Board to consider whether the 1990 BVA decision was the product of CUE pursuant to section 7111. However, the record does not reflect that the appellant has ever attempted to challenge that BVA decision on the basis of CUE. In fact, in his motion for reconsideration of the Board's 1997 decision, the appellant made clear that his challenge was directed at the RO's 1981, 1982, and 1984, decisions and that he was not seeking reconsideration of the Board's 1990 decision. Supp. R. at 6, 8. As the Board noted, the appellant may still challenge that 1990 decision by filing a motion for reconsideration. Moreover, section 7111 affords him a second avenue of relief in that he may now challenge that 1990 decision on the basis of CUE. However, as no evidence of his making such a claim appears in the record on appeal, this Court is without jurisdiction to remand that matter to the Board.

### E. VCAA

In *Livesay v. Principi*, 15 Vet.App. 165, 178-79 (2001) (en banc), this Court held that the VCAA has no application to allegations of CUE as a matter of law. In the instant case, however, unlike in *Livesay*, the Board did not address the merits of the appellant's CUE claims, rather it determined that the RO decisions at issue were not subject to review for CUE as a matter of law. Thus, it is the law, and not the underlying facts or development of the facts that are dispositive in this matter. Accordingly, the VCAA can have no effect on this appeal. *See Smith v. Gober*, 14 Vet.App. 227 (2000) (VCAA has no effect on appeal limited to interpretation of law); *Dela Cruz v. Principi*, 15 Vet.App. 143 (2001) (VCAA not applicable where law, not factual evidence, is dispositive); *see*

11

*also Bernklau v. Principi*, 291 F.3d 795, 804-06 (Fed. Cir. 2002) (duty to assist provisions of VCAA are not retroactive).

### III. CONCLUSION

Upon consideration of the foregoing, the March 13, 1997, decision of the Board of Veterans' Appeals is AFFIRMED.

KRAMER, *Chief Judge*, concurring in part and dissenting in part:  I concur in the decision except as to part II.A.  Because, for the reasons set forth below, I disagree with the majority's conclusion as to this Court's jurisdiction over the appellant's July 1997 motion for reconsideration of the March 1997 Board of Veterans' Appeals (Board) decision, I respectfully dissent from that part of the majority opinion.

In holding that the Court has jurisdiction over the denial of the appellant's motion for reconsideration, particularly his argument regarding the standard of review utilized by the Senior Deputy Vice Chairman of the Board in denying that motion, the majority relies upon *Mayer v. Brown*, 37 F.3d 618 (Fed. Cir. 1994), *overruled in part by Bailey v. West*, 160 F.3d 1360, 1368 (Fed. Cir. 1998) (en banc), and *Engelke v. Gober*, 10 Vet.App. 396 (1997).  In so doing, however, the majority appears to be in conflict with prior caselaw that provides that this Court's jurisdiction over reconsideration motions is limited to situations where an appellant has alleged either new evidence or changed circumstances in his motion.  *See Romero v. Brown*, 6 Vet.App. 410, 412 (1994) (whether Court may review denial of reconsideration depends on basis for motion; key question is whether there is new evidence or changed circumstances that might make judicial review available); *Losh v. Brown*, 6 Vet.App. 87, 90 (1993) (Court's power to review denials of reconsideration is limited by Supreme Court's holding in *I.C.C. v. Locomotive Engineers*, 482 U.S. 270, 284 (1987), that, if petition that was denied sought reopening based on new evidence or changed circumstances, review is available; otherwise, agency's refusal to go back over ploughed ground is nonreviewable); *Patterson v. Brown*, 5 Vet.App. 362, 363-65 (1993) (to same effect); *see also Mayer*, 37 F.3d at 620 (this Court *may* have jurisdiction over reconsideration motion); *Engelke*, 10 Vet.App. at 399-400 (discussing review of appellant's motion for reconsideration in terms of new evidence and changed

circumstances). Because I believe that, pursuant to *Locomotive Engineers*, *supra*, and this Court's precedential caselaw, our review of the denial of a motion for reconsideration is limited to the situations where an appellant has alleged in that motion either new evidence or changed circumstances, I cannot join in the majority's holding to the contrary.