Citation Nr: 1134089 
Decision Date: 09/12/11 Archive Date: 09/22/11

DOCKET NO. 06-14 134 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUE

Whether the appellant's income is excessive for the receipt of nonservice-connected death pension benefits. 

(The issue of entitlement to service connection for the cause of the Veteran's death will be addressed in a separate decision).


REPRESENTATION

Appellant represented by: Texas Veterans Commission


ATTORNEY FOR THE BOARD

Paul S. Rubin, Counsel

INTRODUCTION

The Veteran had active military service from December 1943 to April 1946. He died on October [redacted], 2005. The appellant is his widow (surviving spouse). 

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2006 decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

The Board remanded this case in June 2008 for further development. After completion of this development by the Agency of Original Jurisdiction (AOJ), the case has been returned to the Board for further appellate consideration.


FINDING OF FACT

The appellant's countable annual family income for a surviving spouse with no dependents, minus unreimbursed medical expenses, exceeds the maximum annual pension rate (MAPR) for death pension benefits beginning October [redacted], 2005.


CONCLUSION OF LAW

The criteria for entitlement to nonservice-connected death pension benefits beginning October [redacted], 2005 are not met. 38 U.S.C.A. §§ 1503, 1521, 1541 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.3(b)(4), 3.21, 3.23, 3.271, 3.272, 3.273 (2010). 




REASONS AND BASES FOR FINDING AND CONCLUSION

VA's Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2010). However, the provisions of the VCAA have no effect on an appeal where the law, and not the underlying facts or development of the facts, is dispositive of the matter, such as in the present case. Manning v. Principi, 16 Vet. App. 534, 542-543 (2002). See also Smith v. Gober, 14 Vet. App. 227, 230 (2000), aff'd, 281 F.3d 1384 (Fed. Cir. 2002), cert. denied, 537 U.S. 821 (2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); VAOGCPREC 5-2004 (June 23, 2004). Therefore, the Board finds that no further action is necessary under the statutory and regulatory duties to notify and assist. 

Governing Laws and Regulations for Death Pension

Death pension is available to the "surviving spouse" of a Veteran because of his nonservice-connected death, as long as the Veteran served for the required period of time during wartime subject to certain income limitations. See 38 U.S.C.A. §§ 101, 1521(j), 1541 (West 2002 & Supp 2010); 38 C.F.R. §§ 3.3(b)(4), 3.23(a)(5), (d)(5), (2010). 

Basic entitlement exists if, among other things, the surviving spouse's income is not in excess of the applicable MAPR specified in 38 C.F.R. § 3.23 as changed periodically and reported in the Federal Register. See 38 U.S.C.A. § 1521 (West 2002 & Supp. 2010); 38 C.F.R. §§ 3.3(b)(4), 3.23(a), (b), (d)(5) (2010). The MAPR is published in Appendix B of VA Manual M21-1 (M21-1) and is to be given the same force and effect as if published in VA regulations. 38 C.F.R. §§ 3.21, 3.23. The MAPR is revised every December 1st and is applicable for the following 12-month period. The MAPR shall be reduced by the amount of the countable annual income of the surviving spouse. 38 U.S.C.A. §§ 1503, 1521; 38 C.F.R. §§ 3.3, 3.23(b) (2010). Fractions of dollars will be disregarded in computing annual income. 38 C.F.R. § 3.271(h). 

In determining annual income, all payments of any kind or from any source (including salary, retirement or annuity payments, or similar income, which has been waived) shall be included during the 12 month annualization period in which received, except for listed exclusions. 38 U.S.C.A. § 1503(a); 38 C.F.R. § 3.271(a). Social Security Administration (SSA) income is not specifically excluded under 38 C.F.R. § 3.272, nor is the income of a child in the custody of the surviving spouse. In fact, the surviving spouse's annual income includes the annual income of the surviving spouse and the Veteran's children in her custody. 38 C.F.R. § 3.23(d)(5). Such incomes are therefore included as countable income. 

The types of income which are excluded from countable income for VA pension purposes includes welfare benefits; maintenance benefits furnished by a relative, friend, or a charitable organization; VA pension benefits; casualty loss reimbursement; profit from the sale of property; joint accounts; medical expenses; expenses of last illnesses, burials, and just debts; educational expenses; a portion of the beneficiary's children's income; Domestic Volunteer Service Act Programs payments; distributions of funds under 38 U.S.C. § 1718; survivor benefit annuities; Agent Orange settlement payments; restitution to individuals of Japanese ancestry; cash surrender value of life insurance policies; income received by American Indian beneficiaries from trust or restricted lands; Radiation Exposure Compensation Act payments; and Alaska Native Claims Settlement Act payments. 38 C.F.R. § 3.272 (2010). The types of income excludable for VA pension purposes must be deducted in the year in which they occurred. Id. Accordingly, should the expenses reduce the income below zero, the remaining expenses will not count against the next year's income.

Unreimbursed medical expenses in excess of 5 percent of the MAPR, which have been paid, may be excluded from an individual's income for the same 12-month annualization period to the extent they were paid. 38 C.F.R. § 3.272(g)(1)(iii). In order to be excluded from income, these medical expenses must be paid during the time period at issue, regardless of when they were incurred. In addition, they must be out-of-pocket expenses, for which the surviving spouse received no reimbursement, such as through an insurance company. However, medical insurance premiums themselves, as well as the Medicare deduction, may be applied to reduce countable income.

Recurring income, received or anticipated in equal amounts and at regular intervals such as weekly, monthly, quarterly and which will continue throughout an entire 12-month annualization period, will be counted as income during the 12-month annualization period in which it is received or anticipated. 38 C.F.R. § 3.271(a)(1). Nonrecurring income (income received on a one-time basis), such as the surviving spouse benefit for the month of the Veteran's death, will be counted, for pension purposes, for a full 12-month annualization period following receipt of the income. 38 C.F.R. § 3.271(a)(3). The amount of any nonrecurring countable income received by a beneficiary shall be added to the beneficiary's annual rate of income for a 12-month annualization period commencing on the effective date on which the nonrecurring income is countable. 38 C.F.R. § 3.273(c).

Income is counted toward the calendar year in which it is received. 38 C.F.R. § 3.260(a). A proportionate income limitation will be established for the period from the date of entitlement to the end of that calendar year for the purpose of determining initial entitlement. 38 C.F.R. § 3.260(d). Thus, the appellant's eligibility for October 2005 and November 2005 will be judged on a proportionate income basis. 

For the purpose of determining initial entitlement, or for resuming payments on an award which was previously discontinued, the monthly rate of pension shall be computed by reducing the applicable maximum pension rate by the countable income on the effective date of entitlement and dividing the remainder by twelve. 38 C.F.R. § 3.273(a). In essence, the Board subtracts the total amount of countable income in one year, less excluded income, from the MAPR for that year, then, if a positive amount remains, the rest is divided by twelve to determine the monthly death pension benefit. When a change in the MAPR occurs, the Board repeats the calculation with the new MAPR as the starting amount. 38 C.F.R. § 3.273(b)(1). When a change in income occurs, the MAPR will be reduced by the new annualized income effective on the date that the increased income began. 38 C.F.R. § 3.273(b)(2). 

As of December 1, 2004, the MAPR as to death pension for a surviving spouse without a dependent child was $6,814. See 38 C.F.R. § 3.23(a)(5); M21-1, Part I, App. B;(http://www.vbaw.vba.va.gov/bl/21/pulblicat/Manuals/Rates/pen0204.htm). Five percent of this amount is $340.

As of December 1, 2005, the MAPR as to death pension for a surviving spouse without a dependent child was $7,094. See 38 C.F.R. § 3.23(a)(5); M21-1, Part I, Appendix B; (http://www.vba.va.gov/bln/21/Rates/pen0205.htm). Five percent of this amount is $354.

Analysis - Death Pension

Initially, as to the death pension claim, the record reveals that the Veteran has the requisite wartime service, the appellant has the minimal net worth for pension, and for purposes of this decision, it will be assumed the Veteran's death was nonservice-connected. See 38 C.F.R. § 3.3(b)(4). However, the RO's denial of death pension benefits was predicated on the surviving spouse's excessive income deemed greater than the MAPR in the year the Veteran died, continuing into the year she submitted a VA Form 5655, Financial Status Report (FSR). 

For purposes of determining the initial entitlement to pension, the Board will consider the 12-month annualization period after the date of death (October [redacted], 2005). See 38 C.F.R. § 3.273(a). In addition, effective December 1, 2005, the MAPR income limit and the appellant's SSA income benefit rate both increased. When a change in the MAPR occurs, the Board repeats the calculation with the new MAPR as the starting amount. 38 C.F.R. § 3.273(b)(1). Thus, the Board will also consider the 12-month annualization period from December 2005 through November 2006. The Board will consider both the December 1, 2004 and December 1, 2005 MAPRs in determining the appellant's entitlement to death pension. 

Beginning on the Veteran's date of death (October [redacted], 2005) through November 2005, with regard to income, the surviving spouse received SSA income benefits in the amount of $1053.20 a month. See January 2006 electronic SSA report. For the purposes of determining initial entitlement, had she continued to receive the same SSA benefits for a 12-month annualization period from October [redacted], 2005, her annual income would have been $12,638.40 ($1053.20 x 12 months). 

With regard to expenses, the January 2006 electronic SSA report for the surviving spouse showing that as of October 2005, she paid unreimbursed Medicare Part B premiums of $88.50 a month ($1,062 for the year). The appellant also listed various other expenses in her January 2006 FSR, including living expenses, a car loan, and other loans. However, none of these particular expenses are excludable from income for purposes of calculating VA pension. See 38 C.F.R. § 3.272. In addition, medical expenses can only be deducted that are in excess of 5 percent of the MAPR. Here, the total medical expenses for the year ($1,062) subtracted from five percent of the December 1, 2004 MAPR rate ($340) = $722. 

As such, for the initial 12-month entitlement period after October [redacted], 2005, taking the surviving spouse's projected annual income ($12,638.40), and subtracting from this figure the allowable medical expenses ($722), yields a final annual countable income of $11,916.

Therefore, for purposes of determining initial entitlement after October [redacted], 2005, the surviving spouse's countable income ($11,916) clearly exceeds the applicable December 2004 MAPR ($6,814) for death pension. Thus, for this initial projected time period, the appellant was not entitled to VA death pension benefits due to excessive income. 

For the time period from December 2005 through November 2006, the surviving spouse's SSA income benefits increased to $1,096.50 a month. See January 2006 electronic SSA report. On her January 2006 FSR (VA Form 5655), the surviving spouse reported her SSA benefit payments to be $1,168.50 a month, a figure not supported by the electronic SSA report. The Board will utilize the more accurate electronic SSA report in determining her income. Thus, with regard to income, for the annualization period between December 2005 through November 2006, the surviving spouse's yearly income was $13,158 ($1096.50 x 12 months). 

With regard to expenses, the January 2006 electronic SSA report shows that as of December 2005, she paid unreimbursed Medicare Part B premiums of $88.50 a month ($1,062 for the year). Here, the total medical expenses for the year ($1,062) subtracted from five percent of the December 1, 2005 MAPR ($354) = $708. 

As such, from December 2005 through November 2006, taking the surviving spouse's projected annual income ($13,158), and subtracting from this figure the allowable medical expenses ($708), yields a final annual countable income of $12,450.

Consequently, from December 2005 through November 2006, the surviving spouse's countable income ($12,450) clearly exceeds the applicable December 2005 MAPR ($7,094) for death pension. Thus, for the December 2005 through November 2006 annualization period, the appellant was not entitled to VA death pension benefits due to excessive income. 

The Board observes that in the May 2006 VA Form 9, the appellant indicated additional income and liability information would be forthcoming. However, a review of the claims folder does not reveal that any additional financial information was submitted by the appellant subsequent to the January 2006 FSR. 

The Board is sympathetic to the surviving spouse's claim and her particular circumstances. But the surviving spouse's countable income must be less than the annual death pension rate determined by law. VA is bound by the applicable law and regulations as written. 38 U.S.C.A. § 7104(c). Here, her countable income was in excess of the applicable pension rate for death pension. Therefore, the surviving spouse would not be legally entitled to death pension benefits beginning on October [redacted], 2005. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). 


ORDER

Due to excessive income, entitlement to nonservice-connected death pension benefits is denied. 




____________________________________________
C. CRAWFORD
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs