Citation Nr: 1554519 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 13-26 926 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to a benefits payment rate higher than 80 percent of maximum for educational assistance under Chapter 33, Title 38, United States Code (Post-9/11 G.I. Bill).


ATTORNEY FOR THE BOARD

A. Adamson, Counsel








INTRODUCTION

The appellant is the Veteran's daughter. The Veteran had active service from July 1987 to September 1991, from December 2003 to February 2005, from April 2008 to June 2009, and from May 2010 to October 2010. The Veteran had additional service in the Army National Guard. The Veteran transferred 18 months of Chapter 33 benefits to the appellant.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a September 2012 decision by the Education Center at the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma. 


FINDING OF FACT

The Veteran's March 21, 2005, to September 30, 2005, and October 1, 2005, to February 23, 2006, periods of active duty for special work (ADSW), were under Title 32, were not for the purpose of organizing, administering, recruiting, instructing, or training the National Guard, and were not authorized by the President or the Secretary of Defense for the purpose of responding to a national emergency declared by the President and supported by Federal funds.


CONCLUSION OF LAW

The criteria for an educational assistance benefits rate in excess of 80 percent under Chapter 33 of Title 38 of the United States Code (Post-9/11 GI Bill) have not been met. 10 U.S.C.A. §§ 688, 12301, 12302, 12304 (West 2014); 38 U.S.C.A. §§ 101, 3301, 3311, 3313 (West 2014); 38 C.F.R. §§ 3.6, 21.9505, 21.9640 (2015).



REASONS AND BASES FOR FINDING AND CONCLUSION

As explained below, the pertinent facts in this case are not in dispute and the law is dispositive. Consequently, there is no additional evidence that could be obtained to substantiate the claim, and no further action is required to comply with VA's duties to notify and assist. See Manning v. Principi, 16 Vet. App. 534, 542 (2002); VAOPGCPREC 5-2004 (June 23, 2004).

The Post-9/11 GI Bill, 38 U.S.C.A. Chapter 33, provides for VA educational assistance for members of the Armed Forces based on active duty service after September 10, 2001. In this case, basic eligibility is not at issue. Rather, this is a question of the percentage of the maximum amount payable of the benefit. The percentage of maximum amounts payable is determined by aggregate length of the Veteran's creditable active duty service after September 10, 2001. The table is as follows, in pertinent part: 80 percent with at least 24 months, but less than 30 months, of creditable active duty service; 90 percent with at least 30 months, but less than 36 months, of creditable active duty service; 100 percent with at least 36 months of creditable active duty service or with at least 30 continuous days of creditable active duty service and a discharge due to a service-connected disability. 38 U.S.C.A. §§ 3311, 3313; 38 C.F.R. § 21.9640. In this case, the Veteran was deemed entitled to an 80 percent rate. He transferred entitlement of a portion of his benefit to his daughter, the appellant, and she has challenged the rate assigned based upon credible active duty service.

The Post-9/11 GI Bill defines "active duty" as full-time duty in the regular components of the Armed Forces or under a call or order to active duty under 10 U.S.C.A. §§ 688, 12301(a), (d), (g), 12302, 12304. See 38 C.F.R. § 21.9505. 

Under regulations issued in March 2009, implementing the original provisions of the Post-9/11 GI Bill, full-time National Guard duty performed pursuant to orders issued under Title 32, United States Code, was specifically excluded from the definition of "active duty." 38 C.F.R. § 21.9505; see also 38 U.S.C.A. § 101(22)(C) (likewise defining "active duty" to exclude full-time duty in the National Guard under 32 U.S.C.A. 502(West 2014); 38 C.F.R. § 3.6(c)(3) (defining full-time duty performed by members of the National Guard of any State under 32 U.S.C.A. § 502 as "active duty for training").

In January 2011, pursuant to Pub. L. No. 111-377 (the Post-9/11 Veterans Educational Assistance Improvements Act of 2010), § 101, the definition of "active duty" was expressly expanded for purposes of Post-9/11 GI Bill eligibility to include certain full-time service in the National Guard, as follows: (1) in the National Guard of a State for the purpose of organizing, administering, recruiting, instructing, or training the National Guard, or (2) in the National Guard under section 502(f) of Title 32 when authorized by the President or the Secretary of Defense for the purpose of responding to a national emergency declared by the President and supported by Federal funds. 38 U.S.C.A. § 3301(1)(C). The amended definition was given effect as of August 1, 2009, as if included in the original enactment of the Post-9/11 GI Bill. Pub. L. No. 111-377, § 101(d) (effective dates) (notably, the relevant regulation, 38 C.F.R. § 21.9505, has not yet been amended to incorporate the expanded definition of "active duty" as it now appears in the statute).

The appellant contends that the award of education benefits should be at a rate higher than the presently assigned 80 percent. In particular, she contends that the Veteran's period of ADSW from March 21, 2005, to September 30, 2005, should be counted as credible service. The appellant contends that the Veteran's service from March 2005 to September 2005 for the purpose of recovering helicopters and to "send them to be reset and refurbished. He also had to recover other equipment off of the boats that went to Texas." She also described the Veteran's assignment after this to New Orleans following Hurricane Katrina, after which she "didn't see [her] dad for almost another 5 months." She is presumably referencing the period of ADSW from October 1, 2005, to February 23, 2006, which was also deemed to be non-qualifying service for the purposes of eligibility for Post-9/11 GI Bill education benefits. For the sake of completeness, the Board will address both periods of service.

Orders dated in March 2005 indicate that the Veteran was ordered to active duty for special work for the period of March 21, 2005, to September 30, 2005, with direction to report to 1-244 AVN BN, NEW ORLEANS, LA. The stated purpose was FTNG Mobilation Augmentee. Again, the appellant maintains that he recovered helicopters and sent them to be refurbished during this period of duty. She does not contend and the evidence does not show that he was involved in organizing, administering, recruiting, instructing, or training the National Guard at that time. Nor is there a contention or evidence to show that this period of ADSW was authorized by the President or Secretary of Defense for the purpose of responding to a national emergency declared by the President and supported by Federal funds. 

While the official orders for the October 2005 to February 2006 service are not within the record before the Board, the appellant reports that the Veteran served in New Orleans during the second period of ADSW at issue "to deal with the hurricane and its aftermath." The Veteran's DD Form 214 for this period indeed shows that this was ADSW service with an entrance and separation from service in New Orleans, Louisiana, which is consistent in time and place with service in support of Hurricane Katrina clean up. Like the earlier period of service, the appellant does not contend and the evidence does not show that the Veteran was involved in organizing, administering, recruiting, instructing, or training the National Guard at that time. Nor is there a contention or evidence to show that this period of ADSW was authorized by the President or Secretary of Defense for the purpose of responding to a national emergency declared by the President and supported by Federal funds. 

The RO further explained that only ADSW pursuant to Operation Noble Eagle, which was pursuant to Executive Order 13223 and authorized a partial mobilization of the reserves for homeland defense and civil support missions in response to the terrorist attacks on September 11, 2001, met that criteria as service pursuant to "Title 32 USC 502 (F)." As the Veteran's ADSW in both time periods was not pursuant to Operation Noble Eagle, it was not authorized by the President or Secretary of Defense in response to a national emergency. Accordingly, it does not qualify as active duty for Post-9/11 GI Bill purposes on this basis.

Further, the RO appropriately sought information as to the type of ADSW service completed by the Veteran, and was informed by the Department of Defense (DoD) in February 2013, April 2013, and August 2015 that neither period of service qualifies for Post-9/11 GI Bill benefits because the Veteran was assigned to Active Duty Operational Support (ADOS) under Title 32. The orders within the record before the Board for the first period of service at issue indeed show Title 32, United States Code, Section 502(f), as the controlling authority, and again, the facts do not show that any exception within the law applies in this case. The service department's determinations as to an individual's service are binding on VA. Duro v. Derwinski, 2 Vet. App. 530 (1992); Dacoron v. Brown, 4 Vet. App. 115, 120 (1993).

In sum, DoD indicated that these periods of service are not eligible for being deemed active duty for the purpose of Post-9/11 GI Bill benefits. Specifically, DoD found that the Veteran's service was ADSW under Title 32 and not eligible. The Board further observes that the Veteran's service in either period cannot be deemed full-time service under 38 U.S.C.A. § 3301 (1)(C)(i), because it was for a special work assignment and was not for the purpose of organizing, administering, recruiting, instructing, or training the National Guard. Additionally, it was not full-time service under 38 U.S.C.A. § 3301 (1)(C)(ii), because, neither period of ADSW was shown to be authorized by the President or the Secretary of Defense for the purpose of responding to a national emergency declared by the President and supported by Federal funds. 

Accordingly, there is no basis within the applicable law to find that the Veteran's period of ADSW service from March 21, 2005, to September 30, 2005, and from October 1, 2005, to February 23, 2006, can be deemed active duty for the purposes of qualifying service for the Post-9/11 GI Bill. Because there is no additional active service that qualifies for calculation of Post-9/11 GI Bill benefits, there is no basis for Post-9/11 GI Bill education benefits at a rate higher than the presently assigned 80 percent under the pertinent laws and regulations. 

Where the law and not the evidence is dispositive of the issue before the Board, the claim must be denied because of the absence of legal merit or the lack of entitlement under the law. See Sabonis v. Brown, 6 Vet. App. 426 (1994).


ORDER

Entitlement to an educational assistance benefits rate in excess of 80 percent under Chapter 33 of Title 38 of the United States Code (Post-9/11 GI Bill) is denied.



____________________________________________
JOY A. MCDONALD
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs