Morris J. ENGELKE, Jr., Appellant,

v.

Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.

No. 94–274.

United States Court of Veterans Appeals.

Sept. 16, 1997.

Sean Kendall, Boulder, CO, was on the brief for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; David W. Engel, Deputy Assistant General Counsel; and John D. Lindsay, Jr., Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

NEBEKER, Chief Judge:

The appellant, Morris J. Engelke, Jr., appeals from a June 10, 1993, Board of Veterans' Appeals (BVA or Board) decision which denied an increased rating for his service-connected bilateral hearing loss. The appeal also challenges the BVA Chairman's December 30, 1993, denial of the appellant's motion for reconsideration. Based upon the record on appeal and the briefs of the parties, the Court will affirm the decision of the Board and will dismiss the appeal of the BVA Chairman's denial of the motion for reconsideration for the reasons that follow.

## I. FACTS

The appellant had active service in the United States Army from January 14, 1966, until December 20, 1967. Record (R.) at 24. His separation examination noted bilateral hearing loss and, following a VA examination in 1968, the regional office (RO) granted service connection for this condition, assigning a noncompensable rating dating back to December 21, 1967. R. at 22. This rating decision was confirmed by the RO in 1977 (R. at 27), and 1982 (R. at 30).

On September 27, 1988, the appellant sought an increased rating for his condition. He later submitted a letter from a private physician, who stated that he had examined the appellant on December 13, 1988. That examination noted an average pure tone threshold loss of 58 decibels in the right ear and 55 decibels in the left ear. Word recog-

nition ability was 90% and 96%, in the right and left ears, respectively. R. at 37–40. The RO denied the claim for an increase. R. at 43–44. The appellant filed a Notice of Disagreement and requested a personal hearing.

The RO informed the appellant that a personal hearing had been scheduled for June 6, 1989. R. at 60–61. This hearing was postponed at the appellant's request to afford him time to gather supporting evidence. The hearing was rescheduled for August 8, 1989; however, the appellant requested that the hearing be canceled as. he was going to submit additional evidence in support of his claim. R. at 66–70. After his appeal had been docketed at the BVA in November 1989, the appellant requested that another personal hearing be scheduled before the Board ruled on his case. Contrary to the reasons earlier cited by his representatives, he asserted that he had canceled the prior hearings because of conflicting workers compensation and Social Security hearings. R. at 78. His request was granted, his file returned to the RO, and a hearing set for May 8, 1990.

A May 3, 1990, hearing examiner in a private facility recorded the veteran's hearing loss to be "moderate sensorineural loss at most," and stated that retesting was recommended because of the appellant's "responses to certain questions." R. at 89. At the May 8 personal hearing, the appellant requested that any further examination be conducted at the Denver, Colorado, RO. The hearing officer stated that he would consider the evidence and the request and determine whether another examination was needed. R. at 97–99.

The Cheyenne RO notified the appellant by letter dated May 25, 1990, that he was scheduled for an examination on June 4, 1990, at that location. R. at 109. The appellant did not report for the June 4 examination. On June 5, 1990, the appellant's representative submitted a letter to the RO, attaching a letter from the appellant, which explained that the appellant did not wish to submit to the examination at the Cheyenne RO, but rather he wished to be examined in Denver. R. at 101–03. On July 30, 1990, the hearing officer's decision was handed down, stating that jurisdictional limitations dictated that the location of the examination was a decision for the RO, not the hearing officer. It further stated that, as the appellant had failed to appear for the June 4 examination, the decision would be based on the only prior VA examination of record, which did not show that the appellant was entitled to an increased rating. R. at 115–16.

In March 1991, the appellant submitted another private medical examination record which showed his hearing had worsened since the December 1988 VA examination. R. at 136. The RO again scheduled an examination at the Cheyenne location for June 10, 1991. The appellant's wife informed the RO that the appellant would not attend due to "serious family problems." R. at 159. The appointment was rescheduled for June 24, 1991.

On June 21, 1991, an unidentified woman informed the RO that the appellant could not afford the trip from his home in Casper to Cheyenne, although the RO informed her that a van would be made available to transport the appellant to the RO. She was told that, unless a death in the family was the reason for the appellant's failure to appear, the examination would not be rescheduled. *Id.* The appellant failed to appear for the examination and on July 2, 1991, the RO confirmed the noncompensable rating for bilateral hearing loss. R. at 161. On September 24, 1991, the appellant finally submitted to an examination at the Cheyenne RO. R. at 171–73. The attending physician stated that the appellant was uncooperative and that, as a result, the test should be readministered at the Denver VA facility. A Report of Contact dated two days after the examination by a Cheyenne RO employee noted that, when the appellant learned that Dr. Arlan Walter was to conduct the September 24 examination, the appellant became very angry and complained that he knew the results would not be favorable to him. In fact, during the examination, Dr. Walter called this employee and informed her of the problems he was having with the appellant, who was refusing to acknowledge sounds at very high levels. The employee contacted a supervisor, and it

was decided that the case would be referred to the Denver VA for an auditory brain-evoked-response (ABR) examination. R. at 175.

The physician at the Denver VA facility decided that the ABR test was not required and scheduled another examination at a Sheridan, Wyoming, VA facility on December 13, 1991. R. at 180. The appellant failed to appear for this examination. The appellant requested that another examination be scheduled in January; however, he failed to appear for that examination. R. at 181, 183, 185. Despite a final warning from the RO that another missed examination would result in his claim's proceeding to the Board without a current examination, the appellant failed to appear for a February 1992 examination. R. at 190. In its June 10, 1993, decision, the Board found that the appellant had failed to appear for scheduled examinations "without good cause" and, applying the provisions of 38 C.F.R. § 3.655 (1996), denied the claim for an increased rating. R. at 9–10. The appellant's motion for reconsideration was denied by the Chairman on December 30, 1993. R. at 221. This appeal followed.

## II.  ANALYSIS

### A.  The BVA Decision

■ When a claimant fails to appear for a scheduled reexamination pursuant to a claim for an increased rating, 38 C.F.R. § 3.655(b) dictates that the claim be denied unless the appellant has good cause for his failure to appear. This Court has not previously determined what standard of review applies to a Board determination of whether "good cause" has been shown by a claimant under section 3.655. The Court holds that such determinations, which characterize a veteran's conduct, are factual and are subject to the "clearly erroneous" standard of review. Cf. Struck v. Brown, 9 Vet.App. 145, 153 (1996) (Board's determination that a veteran's discharge was result of willful and persistent misconduct, pursuant to 38 C.F.R. § 3.12, is a factual finding); Brown v. Brown, 8 Vet.App. 40 (1995) (Board determination that veteran's conduct was fraudulent and prevented a waiver of indebtedness is a fac-

tual finding). The record reveals that the appellant failed to appear for six of his seven scheduled examinations. The record also shows that the appellant refused to cooperate in the September 1991 examination. There is also evidence in the record that the RO offered the appellant transportation to at least one examination, but the appellant still refused to appear. While the appellant argues to the contrary, the Court holds that, based upon this record, the decision of the Board was not clearly erroneous and was supported by a plausible basis. See Gilbert v. Derwinski, 1 Vet.App. 49 (1990). As a result, section 3.655(b) mandated that the claim for an increased rating be denied and the Board did not err in so deciding.

### B.  The Motion for Reconsideration

■ As an initial matter, because this Court has jurisdiction over the underlying BVA appeal, the appeal of the Chairman's denial of the motion to reconsider that decision is properly before the Court. Mayer v. Brown, 37 F.3d 618 (Fed.Cir.1994). However, the Court's willingness to review these denials has been limited to cases in which the movant alleges either new evidence or changed circumstances. Owens v. Brown, 7 Vet.App. 429, 433 (1995); Losh v. Brown, 6 Vet.App. 87, 90 (1993). Where a claimant alleges only "material error" or attempts to place before the Court an argument that is best reserved for a direct appeal from the underlying BVA decision, the Court will not review the denial of the motion to reconsider. Patterson v. Brown, 5 Vet.App. 362 (1993).

■ The appellant's motion for reconsideration asserts that the Board erred in deciding that he willfully failed to cooperate and appear at the scheduled examinations. Because these arguments reiterate those issues decided by the Board, they do not provide a basis for review of the Chairman's decision. The appellant also states in his motion that a September 9, 1993, VA examination in Denver, which showed that his hearing had worsened (R. at 217), is evidence which warrants reconsideration. While the examination is new, this Court has held that only service department records will constitute new evi-

dence so as to warrant an exercise of our jurisdiction over a Chairman's decision to deny a motion for reconsideration. The appellant's recent examination evidence is more appropriately the subject of a claim to reopen, pursuant to 38 U.S.C. § 5108. *See Romero v. Brown*, 6 Vet.App. 410, 412–13 (1994); *see also* 38 C.F.R. § 20.1000(b) (1996).

 Finally, the appellant contends that the recent hearing examination is evidence of "changed circumstances" upon which the Chairman should have reconsidered the BVA decision, and this Court should review the Chairman's denial. While this Court has never defined "changed circumstances," the origin of the phrase in this Court's jurisprudence is found in the *Patterson* case. The Court held, taking from dicta found in *I.C.C. v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987), that "where a petition for reconsideration alleging new evidence or changed circumstances was denied, judicial review might be available." *Patterson*, 5 Vet.App. at 365. In *McCall v. Brown*, this Court found that the Secretary's own admissions of error in an underlying Board decision constituted "changed circumstances" warranting this Court's exercise of jurisdiction over the denial of the motion for reconsideration. *McCall*, 6 Vet.App. 215, 217 (1994). There have been no other decisions in which this Court has exercised jurisdiction based on, or has attempted to define, "changed circumstances."

The *Locomotive Engineers* case, from which the "changed circumstances" criteria arose, dealt with a completely different agency and statute, namely the Interstate Commerce Commission and 49 U.S.C. § 10327(g)(1). Notably, the statute in that case specifically authorized reevaluating a prior decision of the Commission due to "material error, new evidence, or *substantially changed circumstances*." *Id.* (emphasis added). In contrast, 38 C.F.R § 20.1000, which is based on 38 U.S.C. § 7103, provides for reconsideration of prior BVA decisions by the Chairman based on: (a) allegation of obvious error of fact or law; (b) discovery of new and material evidence in the form of relevant records or reports of the service

department concerned; or (c) allegation that an allowance of benefits has been materially influenced by false or fraudulent evidence submitted [by] the appellant. In order to be faithful to both *Locomotive Engineers* and the Veterans' Judicial Review Act, Pub.L. 100–687, 102 Stat. 4105 (1988), any "changed circumstances" would have to be of the variety set forth in 38 C.F.R. § 20.1000 (e.g., obvious error, new government records, fraud). *See McCall, supra.* ("changed circumstances" was concession by the Secretary of obvious error). The appellant here urges the Court to exercise jurisdiction based upon a medical examination which was conducted after the date of the BVA decision. However, such evidence does not fall within the parameters of § 20.1000, and the mere invocation of the phrase "changed circumstances," without those circumstances actually being rooted in § 20.1000, is not enough for this Court to exercise jurisdiction.

### III. CONCLUSION

The June 10, 1993, decision of the Board is AFFIRMED. The appeal of the December 30, 1993 denial of the motion for reconsideration is DISMISSED.