# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0519

LOUANN WOLFE, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 24, 2019                                      Decided August 31, 2020)

*Harold H. Hoffman III*, of Arlington, Virginia, for the appellant.

*Joshua L. Wolinsky*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and Kenneth A. Walsh, Deputy Chief Counsel; all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, BARTLEY, and FALVEY, *Judges*.

PIETSCH, *Judge*, filed the opinion of the Court. FALVEY, *Judge*, filed a concurring opinion. BARTLEY, *Chief Judge*, filed an opinion dissenting in part.

PIETSCH, *Judge*: The appellant, LouAnn Wolfe, appeals through counsel a December 12, 2016, decision of the Chairman of the Board of Veterans' Appeals (Board). In that decision, the Chairman denied a motion for reconsideration of a May 28, 2014, Board decision finding the appellant not an eligible surviving spouse for purposes of receiving VA death benefits. Record (R.) at 2-11. On March 26, 2019, the Court formed a panel to determine whether the circumstances upon which the Board may grant reconsideration of a Board decision are strictly limited to those specifically listed in 38 C.F.R. § 20.1000.[1] For the reasons that follow, the Court will dismiss the appeal.[2]

---

[1] As of February 19, 2019, § 20.1000 was redesignated as § 20.1001. But for clarity purposes, the Court will refer to the regulation as it was designated at the time of the May 2014 Board decision—§ 20.1000—unless we state otherwise.

[2] *See* Oral Argument at 18:08-19:40, *Wolfe v. Wilkie*, U.S. Vet. App. No. 17-0519 (oral argument held Sept. 24, 2019), https://www.uscourts.cavc.gov/documents/Wolfe17-519.mp3. The appellant, through her representative, stated that she is not alleging any error as to the underlying May 2014 Board decision. Therefore, the Court takes no position on the merits of that decision.

## I. FACTUAL AND PROCEDURAL HISTORY

The veteran (James Wolfe) served in the U.S. Marine Corps from October 1967 to October 1969. R. at 1896. He died on August 9, 2010. R. at 214. In an August 2010 letter, VA informed the veteran's estate of the potential benefits available to the veteran's eligible survivors, further noting that VA records did not state whether the veteran was married at the time of his death. R. at 435-46. In correspondence dated August 2010, Ms. Wolfe, the appellant, provided the veteran's marital history, asserting that she and the veteran had been "together" during the 10 years prior to his death. R. at 433-34. She also wrote that the veteran had been married twice before she and the veteran formed a relationship, and his marriage to Rhonda Mathews officially ended in May 2010. *Id.* In August 2010, the appellant submitted a copy of a May 10, 2010, divorce decree between the veteran and Rhonda Mathews. R. at 423-28. In a letter dated September 2010, the appellant was informed that as the surviving spouse of the veteran, she was entitled to receive the veteran's benefits for the month in which he died. R. at 408-09.

In October 2010, the appellant filed a claim for dependency and indemnity compensation (DIC), death pension, and accrued benefits. R. at 378-85. That same month, she explained that she had met the veteran in 2001, shortly after his previous marriage had ended and they had lived together as husband and wife for 10 years until they were legally married in February 2010. R. at 417-18. In a November 2010 letter, the regional office (RO) denied her claim because the evidence did not show that she met the eligibility requirements of a surviving spouse. R. at 329-31.

The appellant filed a Notice of Disagreement (NOD) with this decision in December 2010. R. at 312-13. In a July 2011 statement, the appellant asserted that she and the veteran were in a common law marriage that dated back to 2001. R. at 108. In a July 2011 Statement of the Case the RO found that though the appellant may be able to establish that she and the veteran were in a common law marriage, this marriage began May 10, 2010, the date of the veteran's divorce from Rhonda Mathews. R. at 215-231. The appellant perfected her appeal in August 2011. R. at 177-78. In a September 2011 Supplemental Statement of the Case, the RO explained that, pursuant to 38 C.F.R. § 3.54(b)(2), to establish entitlement to death benefits the appellant must have been married to the veteran for 1 year or more prior to his death. R. at 174.

In June 2012, the appellant submitted an incomplete copy of a Texas marriage certificate between the veteran and Rhonda Mathews, and, in an adjoining statement, asserted that the veteran had applied for a marriage license with Rhonda Mathews, but they were not actually married. R.

at 113-14. The appellant attended a Board hearing in July 2012 and testified that the veteran and Rhonda Mathews were never legally married, and that she and the veteran began living together in 2001, before he went to prison. R. at 70-73.

In a May 28, 2014 decision, the Board acknowledged that the veteran and the appellant lived together continuously from 2002 until his death in August 2010. R. at 2-11. However, it found that the veteran's previous marriage had not been dissolved until May 2010. Thus, according to the Board, the appellant and the veteran were in a common law marriage less than 1 year before the veteran died in August 2010, and therefore, the appellant was not an eligible surviving spouse for purposes of receiving VA death benefits. *Id*. The Board also determined that the claim for service connection for the cause of the veteran's death was moot. *Id*.

The appellant submitted correspondence in August 2014, which VA construed as a motion for reconsideration of the May 28, 2014, Board decision. Supplemental (Supp.) R. at 5-6; *see* Supp. R. at 1. In December 2014, an Oklahoma State court issued an order vacating the divorce decree between the veteran and Rhonda Mathews. Supp. R. at 13-14. In March 2015, the appellant submitted a request to reopen the DIC claim and included the December 2014 Oklahoma State court order. In a May 2015 rating decision, the RO granted entitlement to DIC benefits pursuant to 38 U.S.C. § 1318, effective March 25, 2015. Supp. R. at 7-9.

In June 2016, the appellant asserted that in May 2014 the Board denied her claim for DIC benefits based on the earlier finding that the veteran was married to Rhonda Mathews up to a few months before his death. Supp. R. at 10-12. But the appellant claimed that the May 2010 divorce decree on which the Board relied to make this determination was not a valid legal document. *Id*. She also submitted the December 2014 order from the Oklahoma State court, which found that Rhonda Mathews fraudulently induced the veteran into believing he was married to her because (1) the marriage license was not fully executed by either party, and (2) the veteran was incarcerated in Texas at the time the alleged marriage took place. *Id.* at 13-14. As a result, the Oklahoma State court determined that the marriage between the veteran and Rhonda Mathews was never legally binding, and thus the court vacated the May 10, 2010, divorce decree. *Id*. The appellant maintained that the May 2014 Board decision was "based on fraudulent documents created by the fraudulent acts that were out of the control of the veteran or the claimant." *Id.* at 11.

In a December 2016 ruling, the Board Chairman denied the appellant's motion for reconsideration. *Id.* at 1-3. On February 21, 2017, the appellant filed a Notice of Appeal (NOA) with this Court as to the denial of the motion for reconsideration of the May 2014 Board decision.

## II. ANALYSIS

### A. *Legal Landscape*

Generally, this Court's review is limited to "final decision[s] of the Board of Veterans' Appeals," 38 U.S.C. § 7252(a), and an NOA of a Board decision must be submitted to the Court within 120 days after the date on which notice of the Board decision was mailed, 38 U.S.C. § 7266. But, the Court may conduct a limited review of the Board Chairman's denial of the motion for reconsideration if the appellant (1) files a motion for Board reconsideration within 120 days after the date the underlying final Board decision was mailed, and then (2) files an NOA within 120 days after the Board Chairman has mailed notice of the denial of the reconsideration motion. *See Rosler v. Derwinski*, 1 Vet.App. 241, 249 (1991).

Under 38 C.F.R. § 20.1000, reconsideration may be accorded at any time by the Board on its own motion or the appellant's motion, under the following circumstances:

> (a) Upon allegation of obvious error of fact or law;
>
> (b) Upon discovery of new and material evidence in the form of relevant records or reports of the service department concerned; or
>
> (c) Upon allegation that an allowance of benefits by the Board has been materially influenced by false or fraudulent evidence submitted by or on behalf of the appellant.

In *Patterson v. Brown*, 5 Vet.App. 362, 365 (1993), the Court, borrowing language from *I.C.C. v. Brotherhood of Locomotive Engineers*, 482 U.S. 270, 280 (1980), found that Mr. Patterson had not alleged either "new evidence" or "changed circumstances." Rather, he had sought reconsideration of a Board decision on "the same record that was before the agency when it rendered its original decision"—i.e., he alleged obvious error. *Patterson*, 5 Vet.App. at 365 (quoting *Microwave Commc'ns, Inc. v. FCC*, 515 F.2d 385, 387 n.7 (D.C. Cir. 1974)). Thus, the Court determined that the Board Chairman's denial was not reviewable because, as *Locomotive Engineers* held, a claimant alleging obvious error could appeal the underlying Board decision and

4

that same issue he or she raised in the motion for reconsideration would then be before the Court. *Id.*

In *McCall v. Brown*, 6 Vet.App. 215, 217-18 (1994), the Court, referencing *Patterson*, found that the Secretary's admission of "obvious error" in a Board decision—as opposed to an appellant's allegation of obvious error—constituted "'changed circumstances' of the sort which compel the exercise rather than the declination of jurisdiction by the Court."

In *Romero v. Brown*, 6 Vet.App. 410, 413 (1994), the Court found that the veteran's allegation in his motion for reconsideration (that the issue of POW status was not presented to the Board prior to its decision) did not constitute "changed circumstances" warranting judicial review. The Court also stated that, by limiting reconsideration to specific new and material evidence (i.e., service records), § 20.1000 carved out a limited alternative to reopening a finally disallowed claim at the RO level. *Id.*

In *Engelke v. Gober*, the Court noted that it had never defined "changed circumstances" and that the term originated from a completely different agency—the Interstate Commerce Commission—and that agency's statute. 10 Vet.App. 396, 400 (1997) (stating that *Patterson* relied on dicta found in *Locomotive Engineers* to hold that judicial review may be available where a motion for reconsideration alleges "new evidence" or "changed circumstances"). The Court stated, however, that to be faithful to *Locomotive Engineers* and the Veterans' Judicial Review Act, "changed circumstances" had to be "of the variety set forth in § 20.1000 (e.g., obvious error, new government records, fraud)." *Id.* When applying this legal precedent to the facts of Mr. Engelke's case, regarding the report from a VA examination conducted after the Board decision, the Court ultimately found the examination report outside the parameters of § 20.1000, noting that the report was not "new evidence" because it was not a service record and it did not otherwise satisfy either of the other two factors--obvious error or fraud. *Id.* The Court concluded that Mr. Engelke's "mere invocation of the phrase 'changed circumstances' without those circumstances actually being rooted in § 20.1000, is not enough for this Court to exercise jurisdiction." *Id.*

### B. Parties' Arguments

The appellant first contends that she has demonstrated "changed circumstances" that would afford the Court a basis to exercise jurisdiction and reverse the Board Chairman's denial of the motion for reconsideration. Appellant's Brief (Br.) at 7. In making this argument, she references *Engelke*, 10 Vet.App. at 400, and asserts that the *Engelke* case stands for the proposition that

§ 20.1000 does not contain an exhaustive list of "changed circumstances." *Id*. at 8. The appellant contends that she has alleged changed circumstances that are, although not explicitly listed, "of the variety" of factors "rooted in" § 20.1000. *Id*. Specifically, she contends that the invalidation of the veteran's previous marriage due to the Rhonda Mathews's fraud "is not merely additional evidence to support [her] claim, but evidence of a changed circumstance," and "[t]hese changed circumstances are 'of the variety' set forth in . . . § 20.1000(c)"; i.e., reconsideration where an allowance of VA benefits based on fraud. *Id*. at 9.

The Secretary interprets this argument as a request to create an exception under 38 C.F.R. § 20.1000 and "to rewrite the regulation for [the appellant's] benefit." Secretary's Br. at 10. The Secretary also contends that the Court does not have subject matter jurisdiction over the appellant's appeal of the Board's denial of reconsideration because she did not fulfill any of the three grounds for reconsideration under § 20.1000. *Id*. According to the Secretary, "changed circumstances is not an expansive term as [a]ppellant contends," but rather "describes the three grounds enumerated for reconsideration under 38 C.F.R. § 20.1000." *Id*. at 11. Quoting *Engelke*, the Secretary noted that the Court held that "'the mere invocation of the phrase "changed circumstances," without those circumstances actually being rooted in § 20.1000 [was] not enough for this Court to exercise jurisdiction.'" *Id*. at 12.

The appellant secondly argues that the "Board [Chairman] does not have the discretion to deny a motion for reconsideration of a denial of benefits that is solely due to fraud." Appellant's Br. at 10. In response, the Secretary argues that the Board Chairman "did not abuse [her] discretion and properly applied the law when [she] determined that the May 2014 Board decision did not necessitate reconsideration under 38 C.F.R. § 20.1000." Secretary's Br. at 16.

The appellant finally argues that VA's interpretation of 38 U.S.C. §§ 7103 and 7104 does not accord with the law because it permits reconsideration of a *grant* of benefits based on fraud but prohibits reconsideration of a *denial* of benefits based on fraud. Appellant's Br. at 11. The appellant maintains that the promulgation of § 20.1000(c) is contrary to the law "because it prioritizes [] VA's interests over claimants[] by providing for reconsideration only to the detriment of claimants." *Id*. at 12. In response, the Secretary contends that "VA's regulations do not need to be universally veteran-friendly in all imaginable circumstances and VA's regulation preventing the allowance of benefits based on false or fraudulent evidence is not contrary to law or an abuse of discretion." Secretary's Br. at 19. The Secretary also stresses Congress's strong sense of

responsibility to the "public fisc" and explains that "the Secretary's enactment of a method to prevent the allowance of benefits based on false or fraudulent evidence under 38 C.F.R. § 20.1000(c) is . . . consistent with the worthy goal of preventing fraud against the government." *Id*. at 20. In her reply brief, the appellant maintains that if § 20.1000 does not contemplate fraud leading to a denial of benefits, then the regulation itself is unlawful because it is contrary to law and Congress's intent. Appellant's Reply Br. at 3-4.

Oral argument was held on September 24, 2019. In a September 30, 2019, order, the Court requested that the Secretary address whether there were instances in which the Board Chairman (or appropriate delegate) has ordered reconsideration for grounds other than those enumerated in § 20.1000. The Court also asked the Secretary to address whether, where the Board found readjudication necessary "due to a Board employee's fraudulent act or omission, such as, but not limited to, an employee's intentional removal of evidence from a claims file, . . . the Board Chairman . . . order[ed] reconsideration . . . or employ[ed] a different readjudication mechanism." Sept. 30, 2019, Order.

The Secretary responded on October 30, 2019, and his response was based on an affidavit from the Vice Chairman of the Board. After reviewing the available 648 grants of reconsideration, the Board found three cases that "included a reconsideration decision and a notation of alleged VA employee fraud to include Board employee fraud." Secretary's Oct. 30, 2019, Response at 2. However, review of these cases showed that "the grant of reconsideration was not based on an allegation of fraud." *Id*. In addition, the Secretary's survey of the available 648 grants of reconsideration did not identify a case in which the grant of reconsideration was made on a basis outside those enumerated under § 20.1000.

### C. Changed Circumstances

The appellant timely filed the motion for Board reconsideration[3] and the NOA.[4] Therefore, the Court has jurisdiction over the underlying May 2014 Board decision (although, as we said, the appellant did not allege any error in this decision), and thus the Court may conduct a limited review

---

[3] She filed the motion for reconsideration of the May 2014 Board decision in August 2014, i.e., within 120 days of that decision. To be clear, a claimant may file a motion for Board reconsideration at any time. 38 C.F.R. § 20.1000 (effective until Feb. 29, 2019). We describe the appellant's motion for Board reconsideration as "timely" solely to note that she filed it within the 120-day judicial appeal period and, therefore, she filed it timely for purposes of determining our jurisdiction.

[4] She filed the NOA in February 2017, i.e., within 120 days of the December 2016 Board Chairman's denial of the motion for reconsideration.

7

of the December 2016 Board Chairman denial. *See Rosler*, 1 Vet.App. at 249; *see also Mayer v. Brown*, 37 F.3d 618, 620 (Fed. Cir. 1994) (holding that the Court may review a denial of reconsideration only where it has authority to review the underlying Board decision), *overruled on other grounds by Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998). Although the Secretary contends that the Court does not have subject matter jurisdiction over the Board Chairman's denial of reconsideration because the appellant does not satisfy any of the three grounds for reconsideration under § 20.1000, Secretary's Br. at 10, it is axiomatic that the Court has jurisdiction at least to determine whether the appellant satisfied one of those grounds.[5]

The appellant's main contention is that the Oklahoma State court's December 2014 order vacating the May 2010 divorce decree based on Rhonda Mathews's fraud is evidence of a changed circumstance "of the variety" outlined in § 20.1000. Appellant's Br. at 8-9 (citing *Engelke*, 10 Vet.App. at 400). She asserts that *Engelke* held that § 20.1000 did not contain an exhaustive list on which the Court may exercise jurisdiction over the Chairman's reconsideration ruling, and thus other factors not explicitly written within the regulations could warrant such reconsideration. *Id*. To support her contention that § 20.1000 does not contain an exhaustive list of "changed circumstances," the appellant relies on *Engelke*'s use of the terms "of the variety" and "rooted in" as indicating the expanded factors on which the Court may exercise its jurisdiction. *Id*.; Oral Argument at 3:06-4:29, 11:57-13:31 (also relying on this Court's decision in *McCall*).[6]

The Court agrees with the Secretary that the appellant misinterprets *Engelke* and what the phrase "changed circumstances" entails. The Court concludes that the appellant bases her argument on taking select terms out of context, without considering the decision in its totality. Rather than broadening the factors that may warrant the Court's exercising jurisdiction over a Chairman's ruling to deny Board reconsideration, *Engelke* clarified that "changed circumstances" must be "rooted in" § 20.1000.

As discussed above, the *Engelke* Court traced the history of how the phrase "changed circumstances" entered our Court's jurisprudence. The *Engelke* Court noted that, although

---

[5] *Accord Manning v. Principi*, 16 Vet.App. 534, 539 (2002) (exercising jurisdiction over the Chairman's denial of reconsideration despite no allegation of new evidence or changed circumstances, in order to address the appellant's argument regarding the proper standard of review under § 20.1000(a)).

[6] At oral argument, appellant's counsel, relying on Merriam-Webster and Cambridge dictionaries, defined the terms "of the variety" as being among a group of things that share general features but differ in some details and "rooted in" as to have developed from something and strongly influenced by it. Oral Argument at 11:57-13:31. Although appellant's counsel also defined "of the sort," that phrase was not used by the *Engelke* Court.

"changed circumstances" arose not from VA, but from a different agency's statute, when applying *Locomotive Engineers* to this Court's review of VA action the *Engelke* Court found the phrase "changed circumstances" needed to be tied to VA's regulation. Although the appellant hinges the thrust of her argument on *Engelke'*s use of "of the variety," *Engelke* concluded that "changed circumstances" must "actually be[] rooted in § 20.1000." 10 Vet.App. at 400. As the appellant noted, *see supra* note 6, "rooted in" means that the changed circumstances must be developed from § 20.1000, meaning that they must be based in the regulation. Contrary to the appellant's assertions, *Engelke* did not hold that conditions similar to but not grounded in the regulation are sufficient for the Court's jurisdiction.

The appellant argued at oral argument--though not in her brief--that in the parenthetical "(e.g., obvious error, new government records, fraud)," the use of "e.g."—as opposed to "i.e."—further supports her argument that *Engelke* expanded the circumstances under which the Court may exercise jurisdiction. Oral Argument at 11:57-13:31. And again the Court concludes that this argument is based on reading the decision out of context. Notably, the *Engelke* Court clearly intended this parenthetical, which distilled § 20.1000 down to a few key words, not to be read in isolation but instead to be read together with the rest of the decision. For example, although the *Engelke* Court distilled § 20.1000(b) down to "new government records," it clearly did not intend to expand the type of evidence that would satisfy the "new evidence" requirement sufficient for the Court to exercise its jurisdiction. In fact, although Mr. Engelke submitted a new government record—in the form of a VA examination report—the Court noted that only service department records would constitute new evidence that would warrant the exercise of jurisdiction. 10 Vet.App. at 399-400 (citing 38 C.F.R. § 20.1000(b)). And the appellant implicitly understands that this parenthetical should be read with the decision as a whole because she does not rely on the *Engelke* Court's unqualified use of "fraud" alone in the parenthetical as a clear statement that her allegation of fraud would allow the Court to exercise jurisdiction.[7]

Moreover, the Court's decision in *McCall* does not support the appellant's arguments. In *McCall*, the veteran filed a motion for Board reconsideration alleging that the underlying Board decision contained obvious errors of fact and law. 6 Vet.App. at 216. The Court noted, however, that, although § 20.1000(a) provides that the Chairman may afford reconsideration upon an

---

[7] To that end, the appellant similarly does not argue that the December 2014 Oklahoma State court order, also a new government record, satisfies § 20.1000(b).

allegation of obvious error of fact or law, the Court will not exercise jurisdiction over the Chairman's denial of reconsideration in such a case because the Chairman's "'refusal to go back over ploughed ground is nonreviewable.'" *Id*. at 217 (quoting *Locomotive Eng'rs*, 482 U.S. at 284). Nevertheless, the Court found changed circumstances sufficient to exercise jurisdiction over the denial of reconsideration because it found itself "presented not only with an *allegation* of obvious error of fact or law by a claimant but also with an *admission* of such error by the Secretary." *Id*. It is the *McCall* Court's exercise of jurisdiction for a basis not specifically contemplated by § 20.1000 on which the appellant relies. *See* Oral Argument at 3:06-4:29.

However, before the *McCall* Court could decide whether to exercise its jurisdiction over a Board's denial of reconsideration, it had to determine whether it had jurisdiction in the first instance. By way of background, Mr. McCall filed an NOA regarding the underlying Board decision, but, because the NOA was untimely, the Court dismissed the appeal as to the underlying Board decision. After the Court dismissed the appeal, Mr. McCall filed a motion for Board reconsideration and then filed a new NOA within 120 days of the denial of reconsideration. The *McCall* Court rejected the Secretary's arguments, based on *Rosler*, that it lacked jurisdiction because the NOA was untimely. And the Court distinguished *Rosler*, noting that *Rosler* involved a challenge to the merits of the underlying Board decision, while Mr. McCall was not challenging the merits of the underlying Board decision, but was instead seeking to review the denial of Board reconsideration. Accordingly, the Court stated, relying on *Patterson*, that "it has jurisdiction to review the Chairman's denial of a motion for reconsideration provided a timely NOA [wa]s filed with the Court from the Chairman's decision." 6 Vet.App. at 217.

The *McCall* Court viewed *Patterson* as holding that the Court has jurisdiction to review rulings on motions for Board reconsideration even when the motion was filed more than 120 days after the underlying Board decision, so long as the NOA seeking to appeal the Chairman's ruling is filed with 120 days. *See Neves v. Brown*, 6 Vet.App. 177, 179-80 (1993) (applying *Patterson* in the same manner). But the Federal Circuit expressly rejected this extension of *Patterson* in *Mayer*, which was issued 7 months after *McCall*. In *Mayer*, the Federal Circuit stated that the Chairman's ruling on the motion for reconsideration is not a decision of the Board and, therefore, our Court's jurisdictional statute—section 7261—does not independently grant jurisdiction over the Chairman's ruling where the Court does not already have jurisdiction. 37 F.3d at 620 ("To the extent that *Patterson* says otherwise, it is incorrect.").

10

Although the Court in *Patterson* had jurisdiction over the underlying Board decision, the Court did not have jurisdiction over the underlying decision in *Mayer* because the motion for reconsideration was not filed within 120 days of the underlying Board decision, an operative fact shared by *McCall*. Although the Court in *McCall* found jurisdiction over the Chairman's ruling, despite not having jurisdiction over the underlying Board decision, and chose to exercise that jurisdiction, the predicate basis for finding jurisdiction in *McCall* has since been overtaken by the Federal Circuit's decision in *Mayer*.

To the extent that the appellant reads certain language in *Engelke* as broadening the Court's exercise of jurisdiction, her argument is based on the *Engelke* Court's accommodation of *McCall*, which the *Engelke* Court noted was the lone instance where the Court has found "changed circumstances" sufficient to warrant exercising jurisdiction over a Chairman's denial of reconsideration.[8] And as the *McCall* Court itself noted, Mr. McCall's case was a "unique situation." 6 Vet.App. at 217. However, because the Court's decision in *McCall* was overtaken by *Mayer*, the Court finds the appellant's arguments regarding her broad interpretation of *Engelke*, which rely in part on *McCall*, unpersuasive.

Therefore, the appellant has not demonstrated that her broad interpretation of the *Engelke* holding is correct. What's more, the Secretary's October 30, 2019, response—which states that, of the available 648 grants of reconsideration surveyed, not one case involved a grant made on a basis outside those enumerated under § 20.1000—further supports that the factors upon which the Board Chairman may grant reconsideration are limited to the criteria listed in § 20.1000.

Moreover, the appellant fails to persuasively demonstrate how her allegation of "changed circumstances" is rooted in § 20.1000(c). The appellant does not dispute that she fails to satisfy the criteria of § 20.1000(c). Instead, she argues that her situation—a denial of benefits materially influenced by fraudulent actions of a third party—is sufficiently similar to situations enumerated under § 20.1000(c) to warrant the Court's exercising jurisdiction. However, because the regulation specifically contemplates reconsideration of an award of benefits based on the presentation of fraudulent evidence—and there were no benefits awarded based on the submission of fraudulent documents here—the Court cannot agree that the appellant's situation is rooted in § 20.1000(c).

The appellant argued at oral argument—though not in her brief—that, in the alternative,

---

[8] Although *Engelke* was issued in 1997, *McCall* remains the single instance when the Court has exercised jurisdiction over the Chairman's denial of reconsideration based on changed circumstances.

her allegation of changed circumstances satisfies § 20.1000(a). Oral Argument at 4:58-5:52, 9:00-:30. In this regard, she argues that the December 2014 Oklahoma State court order is proof that the May 2014 Board decision contained an obvious error of fact necessitating reconsideration. *Id*.[9] This argument is, however, more accurately characterized as the presentation of new evidence. In that regard, because it is undisputed that the December 2014 Oklahoma State court order is not a service department record, *see* 38 C.F.R. § 20.1000(b), the Court may not exercise jurisdiction based on this new evidence. *See Romero*, 6 Vet.App. at 412-13.

Accordingly, because the appellant's situation does not constitute one of the bases for reconsideration under the regulation, the Court may not exercise jurisdiction to review the Board Chairman's denial of the motion for reconsideration. *See Engelke*, 10 Vet.App. at 400 (concluding that the claimant's "mere invocation" that his circumstance was included in § 20.1000, without it actually being "rooted in" that regulation, was not enough for the Court to exercise jurisdiction over the motion for reconsideration). Therefore, the Court will, at the conclusion of this decision, dismiss the appeal of the December 2016 Board Chairman's denial of the motion for reconsideration.

However, although we are unable to review the denial itself, we are still permitted to make determinations regarding the appellant's arguments as to the Board Chairman's discretion under § 20.1000; whether VA's interpretation of that regulation's authorizing statutes are contrary to law; and whether the promulgation of that regulation was an abuse of discretion.

### D. The Board Chairman's Discretion to Order Reconsideration of the May 28, 2014, Decision

The appellant contends that the Board Chairman abused her discretion when she failed to order reconsideration of the May 2014 Board decision. The appellant then summarily states that the Board Chairman "does not have the discretion to deny a motion for reconsideration of a denial of benefits that is solely due to fraud" because (1) the Board Chairman has the authority to grant a motion for reconsideration for reasons not explicitly listed in § 20.1000; (2) the Board Chairman may order reconsideration of allowances of benefits that are the products of fraud under § 20.1000(c); (3) Congress intended for VA adjudications to be nonadversarial and pro-claimant; and (4) VA's interest is that it grants benefits where such benefits are due. Appellant's Br. at 10.

---

[9] To the extent that this argument is premised on *McCall*, we have explained that *McCall* was predicated on an assumption of jurisdiction that the Federal Circuit rejected in *Mayer*, 37 F.3d at 620.

The appellant is incorrect that the Board Chairman "does not have the discretion" to deny a motion for reconsideration, either generally or specifically in this case. The regulation itself is discretionary: "Reconsideration of an appellate decision *may* be accorded." 38 C.F.R. § 20.1000 (emphasis added); *see, e.g.*, *King v. McDonald*, 26 Vet.App. 484, 490 (2014) (noting that a regulation's use of the word "may" connotes discretion).

The appellant implicitly acknowledges that § 20.1000 is discretionary by noting that the Board Chairman "may" order reconsideration of allowances of benefits based on fraud. However, she fails to explain how her references to cases regarding the pro-claimant VA system and cases ensuring that veterans receive benefits to which they are entitled somehow render this regulation nondiscretionary or evidence abuse of the Chairman's discretion. *Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (the Court will not entertain underdeveloped arguments). Without such an explanation, the Court is unable to discern how the Board Chairman's denial here is contrary to veterans law principles and to such an extent that it requires the Court to ignore that the Board Chairman's authority is discretionary.

The Chairman's authority to afford reconsideration of a Board decision is discretionary, but because § 20.1000 instructs the Chairman how to exercises that authortity, the Court may review the Chairman's actions to ensure compliance with § 20.1000. *See Zeglin v. Wilkie*, 30 Vet.App. 121, 132 (2018); *Malone v. Gober*, 10 Vet.App. 539, 545 (1997). However, as discussed above, the *Engelke* Court did not expand the limited set of circumstances upon which the Chairman may grant reconsideration. And, it is undisputed that the appellant's situation does not satisfy any of the bases for reconsideration listed in § 20.1000.

The appellant supports her abuse-of-discretion argument by unpersuasively suggesting that a grant of her motion for reconsideration would have automatically resulted in her obtaining benefits due to her—i.e., an earlier effective date. Although the RO subsequently awarded benefits, the appellant overlooks that even if the Board Chairman had ordered reconsideration of the May 2014 decision, the decision would be reconsidered by a panel of Board members. *See* 38 C.F.R. § 20.1004 (2020).[10] Moreover, the appellant fails to explain how the fact that benefits were ultimately awarded based on new evidence not contemplated by § 20.1000 demonstrates an abuse of discretion in the failure to afford reconsideration. This is particularly true as the Secretary has

---

[10] But, to be clear, this lapse in the appellant's argument is not our reason for finding no abuse of discretion in the Chairman's denial of the motion for reconsideration.

averred that in the 648 instances that the Chairman has afforded reconisderation, in not one instance did the Chairman afford reconsideration for a reason outside § 20.1000.

Accordingly, the Court finds no merit in the appellant's argument regarding the discretion of the Board Chariman to order reconsider of the May 2014 Board decision.

*E. Section 20.1000, Title 38, Code of Federal Regulations, is a Valid Regulation that Properly Interprets 38 U.S.C. § 7103.*

The appellant also maintains that VA's interpretation of sections 7103 and 7104 was not in accordance with the law and that the Secretary abused his discretion in promulgating § 20.1000 because § 20.1000 does not provide for reconsideration of a denial of benefits based on fraud. Appellant's Br. at 11. According to the appellant, the promulgation of § 20.1000(c) is contrary to the law "because it prioritizes [] VA's interests over claimants' by providing for reconsideration only to the detriment of claimants." *Id*. at 12. The appellant contends that "when the VA interprets a statute by promulgating a regulation that 'is unfavorable to veterans, such that it conflicts with the beneficence underpinning VA's veterans benefit scheme, and a more liberal construction is available that affords a harmonious interplay between provisions,' the Court may substitute its judgment for the VA's." *Id*. (quoting *Trafter v. Shinseki*, 26 Vet.App. 267, 272 (2013)). The appellant further contends that § 20.1000(c) is an "abuse of discretion and is contrary to law because it permits the Board [Chairman] to correct fraud that benefitted claimants but does not permit claimants to correct fraud when it was detrimental to them." *Id*. at 12-13.

When an agency, through a formally promulgated regulation, interprets a statute it is charged with administering, judicial review of that interpretation is governed by the two-step inquiry articulated by the Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). Under *Chevron*, a court must first determine "whether Congress has directly spoken to the precise question at issue." 467 U.S. at 842. If Congress has, "that is the end of the matter," and the only question remaining is whether the regulation at issue is in accordance with congressional intent. *Id*. at 842-43.

Section 7103(a) establishes that a Board decision "is final unless the Chairman orders reconsideration of the decision," and states that "[s]uch an order may be made on the Chairman's initiative or upon motion of the claimant." Section 7103(b) sets out the procedures that must be followed upon the Chairman's order for reconsideration. Although Congress provided a

14

mechanism to allow the Board Chairman to afford reconsideration of Board decisions, it did not speak to the issue of reconsideration based on fraud.[11]

Where Congress has not directly spoken to the precise issue, there is a "gap" for the agency to fill. *See Gallegos v. Principi*, 283 F.3d 1309, 1312 (Fed. Cir. 2002). In this second step of the *Chevron* inquiry, courts may not disturb an agency regulation unless it is "arbitrary or capricious in substance, or manifestly contrary to the statute." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53 (2011). Instead, courts will defer to an agency's "reasonable interpretation" of the statute. *Id*. at 58; *Gallegos*, 283 F.3d at 1312. This Court will hold unlawful regulations issued or adopted by the Secretary only where such regulation is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 38 U.S.C. § 7261(a).

The Court disagrees with the appellant that § 20.1000(c) is not in accordance with the law or that promulgating the regulation was an abuse of the Secretary's discretion. First, the appellant argues that § 20.1000(c) is contrary to law because it is not pro-claimant and prioritizes VA's interests over claimants' interests by providing for reconsideration only to the detriment of claimants. Appellant's Br. at 11-14. But, in urging the Court to review § 20.1000(c) in the context of the overall pro-claimant statutory scheme of veterans law, the appellant fails to read this portion of the regulation in the context of the rest of § 20.1000. *See Vazquez-Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013) ("In construing regulatory language, we must read the disputed language in the context of the entire regulation."). In reading subsection c in the context of the entire regulation, we note that although one circumstance in § 20.1000(c) permits the Board Chairman to afford reconsideration of a decision where fraud led to a grant of benefits (and not where it led to a denial of benefits), § 20.1000(a) (obvious error) and § 20.1000(b) (new service department records) provide two circumstances for a claimant to seek reconsideration of a denial of benefits. In other words, although one portion of the regulation may be detrimental to the appellant in this instance, the regulation as a whole is not detrimental to all claimants in general.

In addition, § 20.1000(c) itself is not detrimental to all, or even most, claimants, nor is it inconsistent with the overall purpose of the veterans benefits system, which the appellant contends

---

[11] Congress also provided, under section 7103(c), that the Board may correct an obvious error in the record. However, section 7103(c) references correction of obvious errors without regard to whether there has been a motion for or an order granting reconsideration. In contrast, § 20.1000(a) provides that where there is an obvious error of fact or law in the Board decision, reconsideration may be afforded upon a motion from the claimant or the Board's own motion.

serves to ensure claimants receive benefits to which they are entitled. To ensure that funds are preserved for those who are entitled to benefits, VA must also establish measures to prevent payments to those who are not entitled to the benefits, such as a regulation providing for reconsideration of a grant of benefits based on fraud. Therefore, we do not find § 20.1000(c) contrary to the law.

Second, as for the appellant's argument that the Secretary abused his discretion in promulgating § 20.1000(c), the Secretary has broad authority to "prescribe all rules and regulations which are necessary or appropriate to carry out the laws administered by the Department and are consistent with those laws." 38 U.S.C. § 501(a). That authority includes establishing "regulations with respect to the nature and extent of proof and evidence . . . in order to establish the right to benefits under such laws," "the forms of application by claimants under such laws," and "the manner and form of adjudications and awards." 38 U.S.C. § 501(a)(1), (2), (4). The Secretary did not abuse his discretion by providing, via regulation, factors that may warrant reconsideration of a Board decision, particularly where those factors are not inconsistent with the language of the authorizing statute. *See* 38 U.S.C. § 501(a); *see also United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 25 (1982) ("We consider first whether the [r]egulation harmonizes with the statutory language.").

In addition, § 20.1000(c) appears to be necessary or appropriate to carry out the laws administered by the Secretary. *See* 38 U.S.C. § 501(a). As stated, although the application of this regulation did not lead to a favorable outcome for the appellant, § 20.1000(c) in general helps to ensure that funds are preserved for claimants entitled to benefits by preventing payments to those awarded benefits based on fraud. *See Bowen v. Roy,* 476 U.S. 693, 709 (1986) (the Supreme Court stresses of the importance of "preventing fraud in these [government] benefit programs"); *Wanless v. Shinseki*, 23 Vet.App. 143, 148 (2009) ("Congress intended to avoid wasteful expenditures of Government resources."); *see also Douglas v. Shinseki*, 23 Vet.App. 19, 22 n.1 (2009) ("[I]nherent in the responsibilities of the Secretary, is the duty to protect the public fisc."); *Rhodan v. West*, 12 Vet. App. 55, 58 (1998) (Holdaway, J., concurring) ("[I]t must be remembered that the Secretary is . . . defending the public fisc from the payment of unjustified claims . . . . There is a duty to ensure that, insofar as possible, only claims established within the law are paid.").[12]

---

[12] VA did not mention protection of the public fisc when it amended 38 C.F.R. § 19.185 (1983), the precursor

Finally, the Court does not find § 20.1000(c) unreasonable or unfavorable to veterans, and thus declines appellant's request to substitute our own judgment regarding this regulation. *See Trafter*, 26 Vet.App. at 272. It is reasonable that to preserve funds for veterans entitled to them, the Secretary would create a provision to prevent the award of benefits based on fraud to unworthy individuals. In addition, although § 20.1000(c) does not provide recourse for claimants who believe fraudulent evidence influenced the denial of their claim, an overview of § 20.1000 demonstrates the various ways in which this provision maintains the integrity of the system administering benefits and ensures fairness and equity in the disbursement of benefits. Thus, the appellant incorrectly contends that the regulation is unfavorable to veterans because it conflicts with the beneficence underpinning VA's veterans benefit scheme, Appellant's Br. at 11-15. Further, in regard to the appellant's argument that there is available a more liberal construction that affords a harmonious interplay between provisions—i.e., "interpreting the statutes to authorize claimants to move for reconsideration when fraud causes a denial of benefits," *id*. at 14—as stated, the Court notes that filing a motion for reconsideration is not the only way under the VA benefits system that a claimant can remedy a Board decision, because he or she can also (1) file a claim to reopen his or her claim; (2) seek equitable relief from VA; or (3) file a motion to vacate the decision, *see* 38 C.F.R. § 20.904.

### *F. Summary*

In sum, § 20.1000(c) is in accordance with the law and its implementation was not an abuse of the Secretary's discretion. Further, the Board Chairman has discretion under that regulation, given that the regulation itself is discretionary: "Reconsideration of an appellate decision *may* be accorded." 38 C.F.R § 20.1000 (emphasis added).

In addition, when a motion for reconsideration of a Board decision and an NOA are timely filed, *see Rosler*, 1 Vet.App. at 249, and the Court has jurisdiction of the underlying Board decision, *see* 38 U.S.C. § 7252(a), the Court may conduct a limited review of the Board Chairman's denial of the motion for reconsideration, *see Mayer*, 37 F.3d at 620, if the claimant's situation is one of those enumerated under § 20.1000; *see Engelke*, 10 Vet.App. at 400. Further, it is axiomatic

---

to § 20.1000, to include reconsideration of a grant of benefits based on fraud. *See* 50 Fed. Reg. 36,992, 36,992 (Sept. 11, 1985) (stating that the amendment was part of several amendments "designed to provide a formal procedure for reconsidering decisions based upon the allegation that an allowance of benefits by the Board has been materially influenced by false or fraudulent evidence" and "to ensure an equitable uniformity in the limited number of cases involved"). However, based on the caselaw mentioned above, preventing fraud and preserving funds for entitled claimants appears always to be a consideration for VA.

that the Court has jurisdiction to determine whether the claimant's situation is one of the factors under § 20.1000.

Here, contrary to the appellant's arguments, *Engelke* did not broaden the circumstances under which the Chairman may grant reconsideration. Rather, that case clarified that, for the Court to exercise jurisdiction over the Chairman's denial of reconsideration, any such situation must comport with the criteria enumerated in § 20.1000. It is undisputed that the appellant's situation does not constitute one of those enumerated in the regulation. Therefore, the Court may not exercise jurisdiction to review the Board Chairman's denial of the motion for reconsideration. *See id*. Thus, the Court will dismiss the appeal of the denial of the motion for reconsideration.

### III. CONCLUSION

The appeal of the Board Chairman's December 12, 2016, denial of the motion for reconsideration of the May 2014 Board decision is DISMISSED.

FALVEY, *Judge*, concurring: Although I agree fully with the majority, I write separately to address the arguments raised by our dissenting colleague.

The dissent asserts that the Board should have vacated its May 2014 decision because the Board knew that the decision may have been based on fraudulent evidence that deprived the appellant of her due process rights, and that such an outcome is required by *Cushman v. Shinseki*, 576 F.3d 1290, 1299-301 (Fed. Cir. 2009). The dissent finds it of no consequence that the appellant filed a motion for reconsideration rather than a motion to vacate because the Chairman routinely refers motions for reconsideration that allege denial of due process for consideration by a Board member as motions to vacate. The dissent concludes that the Board Chairman should have construed the appellant's motion for reconsideration as a motion to vacate the May 2014 Board decision.

But the appellant never raised the argument that the Board Chairman should have construed her motion for reconsideration as a motion to vacate based on deprivation of due process. The propriety of a court's injection of an unraised issue into a case on appeal was the subject of a recent Supreme Court decision. Justice Ruth Bader Ginsburg, writing for a unanimous Supreme Court, reversed the U.S. Court of Appeals for the Ninth Circuit's "takeover of [an] appeal," stating that "our system is designed around the premise that parties represented by competent counsel know

18

what is best for them, and are responsible for advancing the facts and argument entitling them to relief." *United States v. Sineneng-Smith*, No. 19-67, 2020 WL 2200834, at *3-*5 (U.S. May 7, 2020) (internal quotation marks omitted). Justice Ginsburg then repeats the wisdom that "'[c]ourts are essentially passive instruments of government.'" *Id.* (quoting *United States v. Samuels*, 808 F. 2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of rehearing en banc)). "They 'do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties.'" *Id.*

Yet, this is precisely what our dissenting colleague would do. Rather than decide the question presented by the parties—i.e., whether the appellant's situation constituted a basis for the Board Chairman to grant reconsideration, which she agrees it does not—our dissenting colleague would instead raise and answer a new question, without the benefit of briefing. Moreover, she does not provide any authority for her proposition that the Court has the power to review entirely discretionary actions of the Chairman. Although we may question the Board Chairman's failure to construe the motion for reconsideration as a motion to vacate, we should not raise and then decide arguments on behalf of represented parties, particularly where the Court's power to dictate the exercise of discretionary actions is, at best, questionable.

To be sure, we are not bound by specific arguments when resolving the legal question before us. As the authorities cited by our dissenting colleague explain, we must resolve the legal issues before us according to the law. This is true even if the parties don't cite that law. But the Chairman's failure to vacate a Board decision is not the issue before the Court. The issue before us is whether the appellant's case qualified for reconsideration. We don't need to address the standard for vacatur to agree that it does not.

BARTLEY, *Chief Judge*, dissenting in part: I agree with my esteemed colleagues as to sections II.A., II.B., and II.C. of the opinion, including those parts of section II.C. that explain why Ms. Wolfe's situation, although reprehensible, is not "rooted in" 38 C.F.R. § 20.1000(a) and (c) (effective through Feb. 18, 2019) and thus not a basis for the Board Chairman to grant a motion for reconsideration. However, considering the fraud perpetrated against the deceased veteran and Ms. Wolfe, which resulted in the Board denying surviving spouse status and entitlement to death benefits, I dissent in part as to sections II.D. and II.E. Knowing of the fraud against an entitled

19

beneficiary, the Board was obligated to correct its error sua sponte because it has a responsibility to ensure due process for VA claimants. The Board should have vacated the May 2014 denial because it knew that the decision was based on fraudulent evidence that deprived Ms. Wolfe of her due process rights. This outcome is required by *Cushman v. Shinseki*, 576 F.3d 1290, 1299-301 (Fed. Cir. 2009).

The facts of Ms. Wolfe's case are sufficiently laid out in section I of the majority opinion and are consistent with the facts of *Cushman*, where the U.S. Court of Appeals for the Federal Circuit found that a record in Mr. Cushman's file was improperly altered to show that he was not unemployable. The Federal Circuit found that the altered record materially changed the outcome of the adjudication, depriving Mr. Cushman of due process and fair adjudication. 576 F.3d at 1292 ("Mr. Cushman's due process rights were violated in this case by the consideration of tainted medical evidence").

Likewise, in this case Ms. Wolfe demonstrated that a fraudulent document directly affected her claim for death benefits, causing the veteran to needlessly obtain a May 2010 divorce decree that served to void her legal marriage to the veteran. The fraud led the Board to erroneously conclude that Ms. Wolfe's relationship with the veteran, even considering common law marriage rules, failed to satisfy VA's 1-year marriage requirement. VA's subsequent award of benefits following Ms. Wolfe's actions to abrogate the fraud demonstrates the prejudicial effect that the fraud had on the May 2014 Board decision. Under *Cushman*, the denial of due process of law that occurred here is more than sufficient for the Board to vacate the May 2014 Board decision that relied on fraudulent evidence to deny Ms. Wolfe benefits to which she was entitled.

The failure of the parties to raise this issue does not preclude the Court from raising it sua sponte. *See Patton v. West*, 12 Vet.App. 272, 283 (1999) (citing *Davis v. United States*, 512 U.S. 452, 464, 465 (1994) (Scalia, J., concurring) (noting an "obligation to decide according to the law")) (noting that "U.S. courts of appeals have the discretion to raise legal issues not raised by a party"); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("[O]nce an issue or claim is properly before a court, the court is not limited to the particular legal theories advanced by the parties but retains the independent power to identify and apply the proper construction of governing law.").

Motions for reconsideration and motions for vacatur are "alternative avenue[s] for an appellant to request that the Board take another look at one of its decisions." *Harms v. Nicholson*,

20 Vet.App. 238, 244 (2006) (en banc), *aff'd*, 489 F.3d 1377 (Fed. Cir. 2007). Both types of motions, if successful, result in the same outcome: nullification of the Board decision. *Id.* at 243; *see Browne v. Principi*, 16 Vet.App. 278, 282 (2002) (per curiam order). As the majority details, *supra* at 7-12, the Chairman may accord reconsideration of a Board decision denying benefits in a limited set of circumstances: Upon an allegation of obvious error of fact or law or upon discovery of new, relevant service department records or reports. 38 C.F.R. § 20.1001 (2019). On the other hand, a Board decision denying benefits may be vacated upon a showing that the claimant was denied due process. 38 C.F.R. § 20.1000 (effective from Feb. 19, 2019); *see* 38 C.F.R. § 20.904 (effective through Feb. 18, 2019). Section 20.1000 doesn't provide a discrete list of circumstances where vacatur will be granted; instead, it provides some "[e]xamples of circumstances in which denial of due process of law will be conceded." 38 C.F.R. § 20.1000(a); *see* 38 C.F.R. § 20.904(a) (effective through Feb. 18, 2019). It is obvious that this nonexhaustive list allows the Board the flexibility to correct its decisions in a variety of circumstances where a claimant was denied the fundamental right to due process of law.

The majority reasons that the reconsideration regulation that addresses fraud against VA is necessary to "ensure that funds are preserved for those who are entitled to benefits." *Supra* at 16. Obviously, I have no quarrel with this view. But it makes no sense to eloquently support reconsideration of Board decisions that award benefits based on fraud without expressing equal concern about claimants such as Ms. Wolfe, who are denied benefits based on fraud. She is one of those to whom the majority refers: she is "entitled to benefits." But the funds owed her remain in VA's pocket as a result of VA's failure to sua sponte fix a clear due process violation. *See Henderson v. Shinseki*, 562 U.S. 428, 431 (2011) ("VA's adjudicatory process is designed to function throughout with a high degree of informality and solicitude for the claimant." (internal quotation omitted)); 38 C.F.R. § 3.103(a) (2019) (stating VA's policy that "it is the obligation of VA to . . . render a decision which grants every benefit that can be supported in law while protecting the interests of the Government").

It is of no significance that Ms. Wolfe filed a motion for Board Chairman reconsideration rather than a motion to vacate. The Chairman routinely refers motions for reconsideration that allege a denial of due process for consideration by a Board member as a motion to vacate. *See, e.g.*, BD. VET. APP. 20003363, 2020 WL 1549796 (Jan. 14, 2020) (Board decision vacates a prior decision where a "motion for reconsideration" alleged that certain VA treatment records were not

before the Board at the time of its prior decision, thereby denying due process of law); BD. VET. APP. 19197149, 2019 WL 8054206 (Dec. 31, 2019) (Board decision vacates a prior decision where a "motion for reconsideration" stated that service records were not before the Board at the time of its prior decision, thereby denying due process of law); BD. VET. APP. 19196401, 2019 WL 8053460 (Dec. 27, 2019) (Board decision vacates a prior decision where a "motion for reconsideration," filed through her attorney indicates that the Board improperly dismissed the appeal in a prior decision); BD. VET. APP. 19196274, 2019 WL 8053333 (Dec. 26, 2019) (Board decision vacates a prior decision where a "motion for reconsideration" indicated that the prior decision was rendered before certain evidence submitted prior to the decision was added to the electronic claims file, thereby depriving the claimant of due process of law). Given the Board Chairman's practice in these other cases, I don't understand why the Chairman did not refer this motion to the Board for vacatur as a denial of due process of law.

In conclusion, given the circumstances of this case and the nonadversarial, pro-claimant nature of the VA benefits system, the Board Chairman should have construed Ms. Wolfe's motion for reconsideration as a motion to vacate the May 2014 Board decision. To do so would comport with the Chairman's vital responsibility to ensure the integrity of the Board's process for considering appeals and administering benefits to worthy beneficiaries, and ensuring due process of law to VA claimants.

For these reasons, I respectfully dissent in part from sections II.D. and II.E. of the opinion.